556 So.2d 431 (1989)
Robert Thomas KRAEMER, Jr., As Personal Representative of the Estate of Marguerite Voorhees Kraemer, Deceased, and Robert Thomas Kraemer, Jr., Individually, Appellant,
v.
GENERAL MOTORS ACCEPTANCE CORPORATION, Appellee.
No. 88-02372.
District Court of Appeal of Florida, Second District.
December 27, 1989.
Rehearing Denied February 7, 1990.
*432 Thomas P. Fox, Tampa, and Bard D. Rockenbach and David J. Abbey of Fox & Grove, Chartered, St. Petersburg, for appellant.
Larry I. Gramovot of Stuart, Gramovot & Strickland, P.A., Tampa, for appellee.
Jeffrey B. Shapiro and Judy D. Shapiro of Herzfeld and Rubin, Miami, amicus curiae, Florida Motor Vehicle Leasing Group.
CAMPBELL, Chief Judge.
Appellant, Robert Thomas Kraemer, Jr., challenges a final summary judgment in favor of appellee, General Motors Acceptance Corporation (GMAC), finding that GMAC, the record title owner of a vehicle leased to Michael Anthony Green, was not the beneficial owner of that leased vehicle so as to impose liability upon appellee under the dangerous instrumentality doctrine created in Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975 (1917) (Anderson I) and Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920) (Anderson II). We agree and affirm.
In April of 1986, Michael Anthony Green entered a contract with appellee GMAC to lease a 1987 Nissan Maxima from GMAC. The lease was to be handled through United Leasing in Tampa. The automobile was bought through and delivered by Jake Sutherlin Oldsmobile  Nissan  Cadillac. According to the lease agreement, the application for the certificate of title and the certificate of registration, GMAC had purchased the automobile from Jake Sutherlin and was the owner of record while Jake Sutherlin was an agent of GMAC. This is known as a closed end vehicle lease agreement.
The terms of the lease are as follows: Michael Green and his father, William Green, would make forty-eight monthly payments, at the end of which time the Greens, as lessees, would have the option to purchase the automobile for its fair market value. The lessees could exercise their ownership option only at the natural termination of the contract or on "early termination." In addition, the lessees were responsible for all maintenance, for obtaining the tag and registration and for paying all taxes. The lessees were also to obtain liability insurance and were the beneficiaries of the manufacturer's original warranty. They were free to use the automobile at will so long as it was not removed from the United States or Canada.
A little over a year after the lease was executed, on May 6, 1987, Calvin Gary, an acquaintance of Michael Green, asked to borrow the automobile to go to the store. Green agreed, but Gary never returned the car. Green ultimately reported it stolen. While using the car, Gary was involved in an automobile accident on May 7, 1987, killing appellant Kraemer's deceased, Marguerite Voorhees Kraemer.
Lessees had not exercised their option to purchase before the fatal collision. To the contrary, at the time of the collision, Michael Green was in default for his failure to obtain insurance and his failure to pay monthly payments. Under the contract, he could not exercise his option to purchase.
*433 GMAC was advised that appellant considered GMAC liable for his deceased's death and would make a wrongful death claim against GMAC. GMAC filed a complaint for declaratory judgment seeking a declaration that GMAC was not liable for Marguerite Voorhees Kraemer's death because GMAC did not have beneficial ownership of the car. That complaint also contained a request for reformation of an insurance policy that is not at issue on appeal. Appellant Kraemer filed an answer, defenses and a counterclaim against GMAC, Green and Gary, seeking money damages from GMAC for Gary's negligence on the basis that GMAC owned the vehicle. GMAC filed an answer and a counterclaim denying beneficial ownership.
GMAC filed a motion for summary judgment on the grounds that it was not the beneficial owner and, therefore, could not be liable under the dangerous instrumentality doctrine. The motion was supported by the affidavit of Wayne Boyd, administrative representative for GMAC. In his affidavit, Boyd asserted that no one at GMAC had ever modified or handled the car. He also asserted that the purchase was arranged by Jake Sutherlin and the lease was arranged by United Leasing of Tampa. He further asserted that no GMAC employee had ever controlled the car and that GMAC had only financed the transaction. It had never exercised a beneficial control or ownership. Finally, Boyd asserted that at the end of the four-year lease, Green could keep the car by paying the fair market value.
In a deposition, Green testified that he never went to GMAC's offices and, before he possessed the car, never spoke to anyone from GMAC. He further testified that the tag and registration were paid by his father, not by GMAC. He stated that no one from GMAC ever told him what to do with the car. Further, there was no difference between his day-to-day operation of the leased car and a car that he subsequently purchased on a conditional sales contract.
The lease provides that upon default, GMAC had the power and right to retake possession. Green was in default on May 7, 1987, the date of the collision, for failure to pay his monthly rental and failure to obtain insurance. The lease also provides that GMAC is the owner and that Green has no claim to ownership and gives GMAC the right to inspect the car.
The trial court entered final summary judgment in favor of GMAC, finding that there were no disputed issues of material fact and that GMAC was not the beneficial owner of the vehicle.
Appellant argues that, as the record title owner of the car that caused the death, GMAC is liable. Appellant contends that the key element is ownership and relies on cases subsequent to Anderson I and Anderson II that have held that the owner of a vehicle who rents or leases it to another is liable for the injuries caused by its operation unless it is stolen from the lessee. Allstate Insurance Co. v. Executive Car and Truck Leasing, Inc., 494 So.2d 487 (Fla. 1986); Allstate Insurance Co. v. Fowler, 480 So.2d 1287 (Fla. 1985); Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla. 1959); Tribbitt v. Crown Contractors, Inc., 513 So.2d 1084 (Fla. 1st DCA 1987).
GMAC, on the other hand, argues that under the dangerous instrumentality doctrine, since GMAC had relinquished beneficial ownership to Green, GMAC was not the "owner" and was not liable.
The Anderson I case imposed liability upon the owner based largely on the fact that the traffic statutes placed various duties on "owners." Similar Florida Statutes now define the term "owner" to include conditional vendees and lessees. See §§ 316.003(26) and 324.021(9), Fla. Stat. (1985). In Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635 (Fla. 1955), the court found that although a contract for sale of the vehicle was not executed until the day after the accident, "the definite intention existed on the part of [the buyer] and [the seller's] representative to make immediate transfer of the beneficial ownership of the vehicle to [the buyer] ..." Palmer, 81 So.2d at 636.
*434 The determinative factor in the Palmer exception to the dangerous instrumentality doctrine was the fact that the buyer had beneficial ownership of the automobile, notwithstanding the fact that the seller held legal title. See also Hicks v. Land, 117 So.2d 11 (Fla. 1st DCA), cert. denied, 120 So.2d 617 (Fla. 1960).
While this issue has not been squarely addressed in Florida, the United States District Court for the District of Columbia in Lee v. Ford Motor Co., 595 F. Supp. 1114 (D.C. 1984), decided this very issue. There, when dealing with precisely the same issue as is involved here, the federal district court ruled that liability attached to the beneficial owner, the long-term lessee, rather than to the long-term lessor who held title to the vehicle in question. See also Moore v. Ford Motor Credit Co., 166 Mich. App. 100, 420 N.W.2d 577 (1988). We do not deem it necessary to rely upon Florida's traffic regulation statutes and financial responsibility laws to conclude that the record title holder as lessor under a long-term lease is not liable for the negligence of the lessee under the dangerous instrumentality doctrine.
Moreover, the Florida Supreme Court has recognized another exception to the dangerous instrumentality doctrine where the owner of the motor vehicle entrusts that vehicle to a repairman or serviceman, so long as the owner does not exercise control over the injury causing operation of the vehicle during the servicing and is not otherwise negligent. Castillo v. Bickley, 363 So.2d 792 (Fla. 1978). The court again recognized that the party with beneficial ownership or control over the vehicle's use at the time of the accident should bear responsibility for the vehicle's use. This limited exception was created "as a matter of social policy and pragmatism." Michalek v. Shumate, 524 So.2d 426, 427 (Fla. 1988).
Here, GMAC maintained none of the indicia of beneficial ownership. The long-term lessee was free to use the vehicle in any way he chose, consistent with protecting the long-term lessor's financial interest should the lessee elect not to exercise his option to purchase.
Appellant confuses the right to repossess with the right to control. Every lending institution that finances an automobile has the right to repossess upon default. This hardly equates with beneficial ownership.
Appellant's attempt to analogize a long-term lease with an option to purchase on a short-term rental is equally without merit. In a short-term rental situation, the rental car company agrees to allow its car to be utilized by the renter for a short period of time, with the rental car company purchasing the tag, obtaining the registration, doing all applicable maintenance and providing insurance. The rental car company also generally determines where the car must be dropped off and whether it may be removed from the state. The only similarity between a long-term lease and a short-term rental is the fact that in both situations title is held by someone other than the driver. Title alone is not sufficient to impose liability under the dangerous instrumentality doctrine.
We therefore agree with the finding of the trial court that appellee was not the beneficial owner of the vehicle in question so as to impose liability under the dangerous instrumentality doctrine. The judgment appealed from is affirmed.
SCHOONOVER, J., concurs.
ALTENBERND, J., concurs with opinion.
ALTENBERND, Judge, concurring.
Dangerous instrumentality is a judicial doctrine which imposes unlimited vicarious liability upon a motor vehicle's "owner" for its operation by another person. This doctrine has its historic roots in the liability of a master for his servant and the right of a principal to control his agent in the performance of a potentially dangerous task. Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975 (1917); Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). Though this doctrine serves several strong public policies, it can achieve results which are harsh and seemingly unfair *435 if applied in cases where the "owner" does not in fact have the ability to control the operation of the motor vehicle. It is noteworthy that this Florida judicial doctrine conflicts with the common law. Most states that have departed from the common law have expanded the owners' liability through legislative action. 7A Am.Jur.2d Automobiles and Highway Traffic § 641 (1980). Thus, Florida's judicial attempt to address the issue of responsibility for injuries caused by motor vehicles is clearly an uncommon, minority approach.
As a practical matter, the modern long-term automobile lease is little more than a method of creative financing. GMAC is technically the legal owner of this car, but its ability to control the use of the car is not significantly different from that of a bank which lends money for the purchase of a car. I completely agree with Chief Judge Campbell that the facts of this case do not warrant a judicial expansion of the dangerous instrumentality doctrine.
Financial responsibility is a legislative doctrine which requires an "owner" either to obtain a policy of liability insurance with specified limits of coverage or to act as an insurer under certain statutorily defined circumstances. Ch. 324, Fla. Stat. (1987). Unlike the dangerous instrumentality doctrine, financial responsibility can be tailored to provide custom solutions for different types of motor vehicle ownership and to provide varying amounts of insurance depending on the nature of vehicle and its use. See § 627.7415, Fla. Stat. (1987). There is no question in my mind that legislative financial responsibility is, both legally and politically, a superior method to address the public concerns arising from the negligent operation of motor vehicles.[1]
While dangerous instrumentality and financial responsibility may be first cousins, I have long believed that we do not promote solid legal analysis when we treat the two doctrines as identical twins. The two doctrines may address the same public concerns, but they do so in very different ways. When the legislature defines an "owner" for purposes of financial responsibility, it does so merely to assure an appropriate amount of insurance to protect the public, not to create unlimited personal liability.
After the long-term lease was executed in this case, but almost a year before the accident, the legislature amended section 324.021(9)(b), Florida Statutes (1987), to provide that a long-term lessor is not an "owner" for purposes of financial responsibility so long as certain levels of insurance are maintained by the lessee. The parties to this appeal agree that the amended statute has no application because it postdates the lease. While I have some doubts concerning that conclusion, it is not this court's function to reopen legal issues which the parties themselves have resolved.
Even if the facts of this case were governed by the amended statute, I do not believe the new definition of "owner" for purposes of legislative financial responsibility would subject GMAC to unlimited liability under the judicial doctrine of dangerous instrumentality. To the extent that dicta in Perry v. G.M.A.C. Leasing Corp., 549 So.2d 680 (Fla. 2d DCA 1989), suggests a contrary result, I disagree. It is unnecessary at this time to determine what liability a lessor may have under financial responsibility if it fails to assure that the lessee provides the required insurance coverage, but that liability should be analyzed as an issue of financial responsibility and not as an issue of dangerous instrumentality.
*436 From a historical perspective, one cannot fault the courts of Florida for their interest in solving the problems arising from the motorized horse at the beginning of the twentieth century. On the other hand, one cannot help wondering whether our judicial actions during the days of the Model T have allowed the legislature to avoid a careful legislative examination of the roles which vicarious liability and insurance can and should best serve in this state's efforts to protect the public from both the danger and the damages created by the motor vehicle. As one member of the judiciary, I would welcome the legislature's decision to replace the judicial doctrine of dangerous instrumentality with a well-conceived, comprehensive statutory alternative.
NOTES
[1] Both dangerous instrumentality and financial responsibility are intended to address two primary public concerns. They promote the safe operation of motor vehicles and thereby attempt to prevent accidents. They also provide a source of compensation for victims of accidents arising from unsafe operation of vehicles. Admittedly, vicarious liability gives an owner a strong incentive to select safe drivers and thereby promotes safety. On the other hand, financial responsibility primarily assures that persons injured in accidents will be compensated. One can seriously question the effectiveness of dangerous instrumentality in avoiding accidents when it applies to owners with only modest control over the use of their vehicles. Likewise, the high cost of insurance and the relationship between its cost and loss experience may now make financial responsibility an effective tool in promoting safety and preventing accidents.