574 So.2d 1091 (1991)
Alonzo T. RAYNOR, Etc., Petitioner,
v.
Alexis DE LA NUEZ, et al., Respondents.
No. 75870.
Supreme Court of Florida.
January 15, 1991.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., and Spence, Payne, Masington & Needle, P.A., Miami, for petitioner.
Ralph O. Anderson of Daniels and Hicks, P.A., Miami, and Bender, Bender, Chandler & Adair, P.A., Coral Gables, for respondents.
Jeffrey B. Shapiro and Judy D. Shapiro of Herzfeld and Rubin, Miami, amicus curiae for Florida Motor Vehicle Leasing Group.
William C. Owen and F. Townsend Hawkes of Carlton, Fields, Ward, Emmanuel, *1092 Smith & Cutler, P.A., Tallahassee, amicus curiae for Florida Auto. Dealers Ass'n.
EHRLICH, Senior Justice.
We have for review Raynor v. De La Nuez, 558 So.2d 141 (Fla. 3d DCA 1990), in which the district court certified its decision to this Court as one of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
On November 23, 1985, Scott Raynor suffered severe injuries when his automobile was struck in Dade County, Florida, by a tractor-trailer driven by Alexis de la Nuez, a resident of New Jersey. Alonzo Raynor, as guardian of the person and property of his son, brought suit against de la Nuez and Checkmate Truck Brokerage, Inc., his alleged employer. Both defendants appeared and filed answers to the complaint. Counsel for de la Nuez was subsequently permitted to withdraw because de la Nuez refused to cooperate in any way and then disappeared. Raynor thereafter filed an amended complaint adding Equilease Corporation as a defendant. It was alleged that Equilease was the owner of the tractor-trailer, which was leased to de la Nuez and Gilberto Garay pursuant to a long-term lease at the time of the accident.[1] The alleged liability of Equilease was based upon its vicarious liability for the negligence of de la Nuez under Florida's "dangerous instrumentality doctrine" as the owner/lessor of the vehicle which caused the injuries.
Equilease filed a motion for summary judgment contending that it could not be vicariously liable as an "owner" of the tractor-trailer in question because it did not have legal title to the vehicle. In its motion, Equilease argued that on July 11, 1983, it properly endorsed the Transfer of Title of the Florida Certificate of Title to defendants Garay and de la Nuez. In support of this argument, Equilease attached a copy of the Florida Certificate of Title reflecting this endorsement. Also attached were copies of applications for certificate of title in Nebraska and New Jersey by Garay and de la Nuez and copies of the Nebraska and New Jersey certificates of title issued to them pursuant thereto.[2]
Equilease also asserted in its motion for summary judgment that even though the document reflecting the agreement between Equilease and de la Nuez and Garay was entitled "Automotive Lease," the contract was in fact a conditional sales contract under New York law and that it did not have beneficial ownership of the vehicle. Equilease noted that the option to purchase the vehicle was prepaid at the time of the execution of the documents and that title was transferred unconditionally with Equilease listed as a first lienholder. The motion stated that possession of the vehicle was transferred from Equilease to Garay and de la Nuez in July of 1983 and that those two individuals had complete possession and control over the use of the vehicle until they sold it in 1988.[3] Equilease asserted that its sole involvement after transferring possession of the vehicle was limited to collection of monies due to them.[4]
*1093 The trial court entered summary judgment on the issue of liability in favor of the defendant Equilease. Raynor appealed the trial court's order to the Third District Court of Appeal, arguing that there was abundant competent evidence in the record which would support a finding of fact that the vehicle was owned by Equilease and leased, not sold, to de la Nuez and the trial court therefore erred in entering summary final judgment in favor of Equilease. The district court affirmed the summary final judgment in favor of Equilease on the basis of Perry v. G.M.A.C. Leasing Corp., 549 So.2d 680 (Fla. 2d DCA 1989), and Kraemer v. General Motors Acceptance Corp., 556 So.2d 431 (Fla. 2d DCA 1989), which were decided subsequent to the filing in the district court of the notice of appeal by Raynor.
In Perry, the defendant, G.M.A.C. Leasing Corporation, was the lessor of an automobile, the negligent operation of which was alleged to be the cause of the damages claimed. The trial court granted a summary judgment in favor of the defendant on the basis of section 324.021(9)(b), Florida Statutes (1987), which creates an exception to the dangerous instrumentality doctrine for long-term lessors if certain liability insurance limits are maintained by the lessee. The Second District Court of Appeal rejected the plaintiff's argument that the statute violated his right to access to the courts in violation of article I, section 21 of the Florida Constitution because it did not appear "that there ever was a common law right of action under the dangerous instrumentality doctrine in Florida against a long-term lessor of a motor vehicle." Perry, 549 So.2d at 682.
In Kraemer, General Motors Acceptance Corporation (GMAC) had entered into a long-term lease agreement with Michael Green with respect to an automobile. Green loaned the car to Calvin Gary who, while using the car, was involved in an accident killing Kraemer's deceased. GMAC filed a complaint for declaratory judgment seeking a declaration that GMAC was not liable for Kraemer's death. After Kraemer filed a counterclaim against GMAC, GMAC filed a motion for summary judgment on the basis that it was not the beneficial owner of the car. The trial court entered summary judgment in favor of GMAC, finding that the record title owner of a vehicle leased to Michael Green was not the beneficial owner of that leased vehicle so as to impose liability upon GMAC under the dangerous instrumentality doctrine.
Kraemer challenged the final summary judgment. The Second District Court of Appeal affirmed the judgment, concluding "that the record title holder as lessor under a long-term lease is not liable for the negligence of the lessee under the dangerous instrumentality doctrine." 556 So.2d at 434. The district court stated that this Court has recognized
that the party with beneficial ownership or control over the vehicle's use at the time of the accident should bear responsibility for the vehicle's use....
Here, GMAC maintained none of the indicia of beneficial ownership. The long-term lessee was free to use the vehicle in any way he chose, consistent with protecting the long-term lessor's financial interest should the lessee elect not to exercise his option to purchase.
Id.
It appears, based upon the cited authority, that the district court below concluded that the trial court correctly entered summary judgment in favor of Equilease because, assuming Equilease was a lessor of the vehicle, it was not the beneficial owner of the vehicle so as to impose liability *1094 under the dangerous instrumentality doctrine. This Court recently, however, quashed the district court decision in Kraemer, rejecting the contention that GMAC could not be held liable for Gary's negligence under the dangerous instrumentality doctrine because it had transferred beneficial ownership of the automobile to Green under its long-term lease. Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363, 1367 (Fla. 1990). In Kraemer, this Court made the following observations regarding the dangerous instrumentality doctrine in Florida:
Florida's dangerous instrumentality doctrine originated in the case of Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 468, 86 So. 629, 638 (1920), in which this Court said:
[O]ne who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway, is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner.
... .
The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation.
Kraemer, at 1364, 1365.
The Court rejected GMAC's attempt to analogize a long-term lease with the right to purchase to a conditional sales contract. As recognized in Kraemer, a
sale has been consummated under a conditional sales contract even though the vendor holds legal title as security for the payment of the purchase price. On the other hand, a lease is an agreement for the delivery of property to another under certain limitations for a specified period of time after which the property is to be returned to the owner.
At 1365-66.
The decision in Kraemer also rejected GMAC's contention that the legislature intended to create an exception to the dangerous instrumentality doctrine by defining owner in section 324.021(9)(a), Florida Statutes (1989), to include lessees such as Green. The Court concluded that although this provision had the effect of requiring certain lessees to purchase liability insurance, it did not reflect an intent to exonerate lessors from liability under the dangerous instrumentality doctrine. The Court also concluded, contrary to the district court's decision in Perry, that it was evident that by enacting section 324.021(9)(b), which provides relief for long-term lessors under certain circumstances, the Florida legislature recognized that under the dangerous instrumentality doctrine long-term lessors were liable for damages caused by drivers of leased automobiles.[5]
On the basis of our decision in Kraemer, we disapprove the opinion of the district court below. Equilease argues that the district court's result, affirmance of the summary judgment in its favor, can nevertheless be approved based on the endorsement of the Florida Certificate of Title and the subsequent issuance of certificates of title to Garay and de la Nuez by the states of Nebraska and New Jersey. We agree. We reject Raynor's argument that the Florida title was not properly endorsed by Equilease pursuant to section 319.22, Florida Statutes (1983), thereby rendering summary judgment in favor of Equilease improper, since certificates of title were applied for and issued by Nebraska and New Jersey to Garay and de la Nuez.
As this Court stated in Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635, 636 (Fla. 1955), with regard to section 319.22,

*1095 [w]hile it is clear that under this section no civil liability can accrue to a seller who has complied with the title certificate requirements, it does not necessarily follow that a seller who does not comply with these requirements is ipso facto liable. This is true because the common law of sales is available to test the liability of a non-complying seller.
The Court then proceeded to examine the evidence submitted on the issue of ownership to determine whether the jury was authorized to return a verdict exonerating R.S. Evans. The Court found that the evidence of the intention of the parties to transfer ownership of the vehicle, coupled with actual delivery of the goods and the tender and acceptance of the down payments, left no doubt that a sale of the vehicle had been completed before the accident occurred. Accordingly, the Court affirmed the jury verdict exonerating R.S. Evans from liability for the accident even though legal title remained in the seller, R.S. Evans, at the time of the accident.
The evidence presented to the trial court in the present case is even clearer than that in R.S. Evans. Equilease endorsed the Florida Certificate of Title to and delivered possession of the motor vehicle to Garay and de la Nuez in July of 1983. Subsequently in 1983, the states of Nebraska and New Jersey issued certificates of title to the vehicle to Garay and de la Nuez, with Equilease named as lienholder. The accident occurred approximately two years later, in November of 1985. There is no doubt that a sale of the vehicle had been completed before the accident occurred. Accordingly, the district court below correctly affirmed the trial court's order of final summary judgment in favor of the defendant Equilease, albeit for the incorrect reason, and we approve the result below.
It is so ordered.
SHAW, C.J., and OVERTON, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion.
McDONALD, Justice, concurring in part and dissenting in part.
I concur with the opinion that there was a valid sale of the vehicle in this case and that Equilease is not vicariously liable for the accident in question. Believing that the decision of the Second District Court of Appeal in Kraemer v. General Motors Acceptance Corp., 556 So.2d 431 (Fla. 2d DCA 1989), was sound and should not have been quashed by this Court, I would also affirm for the other reasons implicit in the opinion under review, but rejected by this Court in Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363 (Fla. 1990).
NOTES
[1] Gilberto Garay was also added as a defendant in the amended complaint as a possible owner of the vehicle. Petitioner contends that Mr. Garay's whereabouts could not be ascertained and petitioner was therefore unable to obtain his appearance in the lawsuit. Checkmate Truck Brokerage obtained a summary final judgment in its favor by establishing that de la Nuez was not its employee at the time of the accident. This left Equilease, as a practical matter, as the only defendant remaining in the lawsuit.
[2] The Nebraska certificate of title was dated July 29, 1983. The New Jersey certificate of title was dated October 21, 1983. The certificates of title from both states reflected Equilease Corporation as lienholder or secured party.
[3] On January 12, 1988, defendants Garay and de la Nuez transferred ownership of the subject vehicle to Frances Alequin pursuant to a New Jersey "Assignment of Certificate of Ownership" signed by Garay and de la Nuez.
[4] The agreement between Garay, de la Nuez, and Equilease Corporation provided for a down payment of $4,500, followed by 48 monthly payments. The vehicle was valued at $45,917 when the agreement was entered into. The total amount to be paid under the agreement, not including sums used to pay for physical damage insurance, was $57,764.

The agreement provided that Garay and de la Nuez had an option to purchase the vehicle for $4,500 at the end of the term of the agreement. This purchase-option amount was prepaid at the inception of the agreement, but the agreement provided that in the event Garay and de la Nuez chose to return the vehicle at the expiration of the agreement, the $4,500 would be returned.
Garay and de la Nuez were responsible for maintenance of the vehicle, for obtaining the licenses and registrations, and for paying all taxes with respect to the vehicle. They were also required to obtain liability insurance.
[5] The parties agree that section 324.021(9)(b), Florida Statutes (Supp. 1986), is not applicable to the case at bar. This provision was enacted in chapter 86-229, section 3, Laws of Florida; the accident occurred in 1985.