591 So.2d 220 (1991)
Johnny Kent FOLMAR, Jr., individually, and as father and next friend of his minor children Johnny Kent Folmar, III and Jennifer Michelle Folmar, and as Personal Representative of the Estate of Mary Jean Folmar, Deceased, Appellant,
v.
Valerie Ann YOUNG, Agnes Young, Laura Boulston, World Omni Leasing, Inc., a Florida corporation, Sawgrass Lighting, Inc., a Florida corporation, Appellees.
No. 88-2571.
District Court of Appeal of Florida, Fourth District.
June 26, 1991.
*221 Arthur M. Wolff of Wolff & Gora, P.A., and James A. Weck of Weck & Weck, P.A., Fort Lauderdale, for appellant.
Joe N. Unger of the Law Offices of Joe N. Unger, P.A., Miami, for appellee-World Omni Leasing, Inc.
Michael J. Murphy of Gaebe, Murphy, Mullen & Antonelli, Coral Gables, amicus curiae, for Ryder Truck Rental, Inc.

ON MOTION FOR REHEARING EN BANC
LETTS, Judge.
We grant the motion for rehearing en banc and in conformity with the very recent Supreme Court decision in Kraemer v. General Motors Acceptance Corporation, 572 So.2d 1363 (Fla. 1990). In Kraemer, the Supreme Court made it clear that section 324.021(9)(a), Florida Statutes (1989) "did not reflect an intent to exonerate lessors from liability under the dangerous instrumentality doctrine." However, the Supreme Court went on to say that section 324.021(9)(b) did act to eliminate long-term automobile lessors from such liability under facts and circumstances which are applicable sub judice. The instant lease was dated August, 1987, after the enactment of Section 324.021(9)(a), (b), and the insurance required under the statute did, in fact, remain in effect. In our opinion reported at 560 So.2d 798 (Fla. 4th DCA 1990),[1] we did not differentiate between subparagraphs (a) and (b) and contented ourselves with citations to both (a) and (b).
To the extent that our previous opinion might be read to include subparagraph (a), we recede therefrom. In all other respects, the motion for rehearing is denied. The amended opinion reads:
The question presented by the plaintiffs, in a cause of action arising out of an automobile accident, is whether the lessor under a long-term "Closed End Vehicle Lease Agreement and Disclosure Statement" was liable under the Florida Dangerous Instrumentality Doctrine. The trial judge entered a final summary judgment holding that the lessor was immune from liability under section 324.021(9)(b), Florida Statutes (1987), which exempts a lessor if the lease is for a year or longer, and requires the lessee to obtain certain insurance coverage. We affirm.
Section 324.021(9)(b) defines the minimum automobile liability insurance requirements. *222 Under the statute, the following factors constitute exemptions precluding the lessor from financial responsibility for acts of drivers:
(9)(b) Owner/Lessor.  Notwithstanding any other provision of the Florida Statutes or existing case law, the lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability; further, this subsection shall be applicable so long as the insurance required under such lease agreement remains in effect, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith.
The plaintiffs argue that the statute requires that each lessee must carry liability insurance of $100,000/$300,000 and property damage insurance of $50,000, and point out that while there is more than one lessee in the case at bar, only one of them obtained the insurance. In other words, they claim the insurance financial responsibility coverage is "per lessee" and not simply "per vehicle." However, they cite no authority for this proposition and we only have the statutory language from which to make a determination. When reading a statute, courts should give language its ordinary meaning and common usage. Rinker Materials Corp. v. City of North Miami, 286 So.2d 552 (Fla. 1973), Holly v. Auld, 450 So.2d 217 (Fla. 1984). Here, the plain meaning of the statute is that each lease agreement requires insurance in the stated minimum amounts. We find no language indicating that each lessee must secure separate insurance coverage.
The next argument is that section 324.021(9)(b) exempts the lessor only from sanctions for failing to meet the financial responsibility laws related to a motor vehicle covered by liability insurance. The plaintiffs again cite section 324.021(9)(b). They claim that the pertinent portion of that provision is "for the purpose of determining financial responsibility." The plaintiffs contend that the foregoing phrase relates only to the issue of whether the lessor is subject to the sanctions set forth in section 324.051.
Such an argument requires this court once again to construe the foregoing statute, and we must look not only at the plain language of the statute, but also its history. Carawan v. State, 515 So.2d 161 (Fla. 1987). Although section 324.021(9)(b) is in the financial responsibility chapter, we do not believe that the specific penalties provided for in section 324.051 apply. Section 324.051 clearly concerns sanctions against individuals in automobile accidents who do not have insurance coverage. We believe that the financial responsibility discussed in section 324.021(9)(b) concerns financial responsibility imposed by the dangerous instrumentality doctrine, not statutory penalties for failing to provide proof of financial responsibility. Moreover, there would have been no need to enact section 324.021(9)(b) to require $100,000/$300,000 coverage if its only purpose was to exempt lessors from section 324.051 which requires $10,000/$20, 000 coverage.
We conclude that section 324.021(9)(b) constitutes an exception to the dangerous instrumentality doctrine in the case of long-term lessors. To support this theory, the lessor cites to the legislative history of this section. On the floor of the House, the arguments against adoption of the amendment were stated by Representative Woodruff:
Ladies and gentlemen, what Mr. Meffert is trying to do is he's trying to get certain people out from responsibility as having an ownership of an automobile, at the present time, Florida has a dangerous instrumentality rule and people go out and rent automobiles and ... they [the rental company] don't want to have to pay in case that individual has a wreck as they would presently have to pay under the State of Florida.
* * * * * *
I think what we are being asked to do here on this amendment is to change the *223 law of Florida as it relates to the liability of the owner of an automobile. As most of you know under current law, and I think the law of all states, the owner of an automobile is financially responsible for any damages caused when that automobile is involved in an accident ... As I understand the amendment as it's been explained on the House floor, it would say that the lessor of the automobile, the owner who is allowing someone else to use it would be avoiding that liability.
In the legislative discussions concerning this amendment, the representatives repeatedly discussed the fact that leases for more than one year are nothing more than alternative methods for financing the purchase of a car. As Representative Gallagher stated:
What he is saying is that we are treating a lease that is for one year or more very similar to a purchase, and that's what it is, that's the latest way of handling cars is to lease them.
Representative Silver stated:
Many times its to the advantage of businesses to lease automobiles for a year or more, all it is, is a tax advantage to that particular business.
He later added:
Most of the people who are doing this type of arrangement are doing it as an alternative financing arrangement.
Under these circumstances, there is no reason to distinguish between the liability of the person who sells the vehicle as opposed to the lessor who leases it. As Representative Upchurch stated:
If you buy that Chevrolet or Ford or what have you, the dealer delivers that car and he has no more liability. But if he leases it to you for a long-term, he has liability. What this amendment will do, is treat the dealer the same whether he leased you the car for a long time or if he sells you the car.
With respect to the adoption of the $100, 000/$300,000 bodily injury liability and $50,000 property damage liability insurance requirements, Representative Meffert stated:
[I]t requires financial responsibility in a minimum amount of $100,000/$300,000 limits which doesn't exist now, if you went to the bank and borrowed the money and bought the car you wouldn't have to carry any liability insurance, if you used this alternative financing, you've got to carry $100,000/$300,000 liability, it also provides that if the insurance is not in effect this subsection is not operable. So we've protected those things ... this is a good amendment. It's very important  it simply covers what has been wrongly done in the past, and it provides that when you use this alternative financing arrangement, that you will have the incidence of ownership with the person that has it, that is the lessee. We also in doing that require them to maintain more financial responsibility than anyone else in the state.
Additionally, the legislators specifically addressed their concern over the imposition of double premiums upon the lessee. Under the previous statutory scheme, both the lessee and the lessor were obtaining liability coverage. As Representative Upchurch stated:
The leasing company must carry the liability insurance on every one of those cars, the individual who rents the car has to carry liability insurance for every one of those cars, and the bottom line is that the guy who leases the car is paying for all the insurance and he's paying for it double ... and so this will save you from paying for double insurance if you lease a car, same as you wouldn't have to pay for double insurance if you purchase a car.
Mr. Dudley added:
As it now exists, there is an additional premium cost to the lessor, what we're trying to do is eliminate that cost which the resulting savings would accrue to the lessee. We believe that the effect of this bill is to make less cost to the consumer or the lessee.
Fla. H.R., tape recording of proceedings (June 6, 1986) (on file with Clerk) (statements *224 from floor debate).[2]
In conclusion, the legislature by this amendment was attempting to limit liability under the dangerous instrumentality doctrine for long-term lessors. The plain language of the statute and the legislative history indicate that section 324.021(9)(b) was enacted to limit the liability of lessors under the dangerous instrumentality doctrine, and we so hold.
It is also argued that the statute is unconstitutional as violative of article I, section 21 of the Florida Constitution, which provides for the right of access to the courts. Although several circuit courts have held that section 324.021(9) is unconstitutional, the Second District in Perry v. G.M.A.C. Leasing Corp., 549 So.2d 680 (Fla. 2d DCA 1989), recently held that the statute was not unconstitutional. The reasoning of the court was that section 324.021(9) does not place a cap on damages. It only mandates that a long-term lessor shall not under certain circumstances be deemed the owner. The statute does not limit or cap a plaintiff's right to recover damages from the lessee. We, therefore, do not believe the statute violates article 1, section 21, although it is true that it eliminates a possible deep-pocket.
It is also argued that the statute is constitutionally infirm because it violates plaintiffs' due process and equal protection rights. As to this, the test is whether a statute bears a reasonable relationship to a permissive legislative objective and is not discriminatory, arbitrary or oppressive. Village of North Palm Beach v. Mason, 167 So.2d 721 (Fla. 1964); Loxahatchee River Environmental Control District v. School Board of Palm Beach County, 496 So.2d 930 (Fla. 4th DCA 1986), affirmed, 515 So.2d 217 (Fla. 1987). The legislation was enacted, in part, to eliminate the imposition of double premiums. Although the plaintiffs argue that the statute creates a discriminatory classification, since lessors remain liable on short-term leases, the legislative history indicates that leases exceeding one year are nothing more than alternative financing agreements which provide a tax advantage to the lessee. Therefore, there is a rational basis for the classification. It would not appear to be unfair to excuse the long-term lessor from vicarious liability when the lessor has no control over the vehicle.
Accordingly, we uphold the constitutionality of the statute.
AFFIRMED.
DOWNEY, GLICKSTEIN, and WARNER, JJ., concur.
HERSEY, C.J., concurs in result only.
ANSTEAD, J., concurs specially with opinion.
DELL, J., dissents with opinion.
GUNTHER, POLEN and FARMER, JJ., concur with J. Dell's dissent.
STONE, J., dissents with opinion.
GARRETT, J., did not participate.
HERSEY, Chief Judge, concurring in result only.
Because we are bound by the language in both Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363 (Fla. 1990), and Raynor v. De La Nuez, 574 So.2d 1091 (Fla. 1991), I concur in the result reached by the majority opinion.
ANSTEAD, Judge, specially concurring.
Like Chief Judge Hersey, I agree that we are bound by the Florida Supreme Court's opinions in Kraemer and Raynor to adhere to the panel opinion of February 6, 1990, and affirm the decision of the trial court.
Initially, I note that we are in the unusual position of having already had the panel opinion in this case quoted at length by the Supreme Court in Kraemer to explain the purpose of the legislature's enactment *225 of section 324.021(9)(b). In Kraemer the Supreme Court emphatically rejected the contention that long-term owner lessors should be judicially excepted from the application of the dangerous instrumentality doctrine. The Court also rejected the contention that the legislature had excepted long-term lessors by enacting section 324.021(9)(a) which defines lessees as owners for financial responsibility purposes. In doing so the Supreme Court noted:
However, in 1986 the legislature did act to eliminate long-term automobile lessors from liability under the dangerous instrumentality doctrine under certain circumstances by the passage of chapter 86-229, Laws of Florida. That law in its present form, as codified at section 324.021(9)(b), Florida Statutes (1989), reads:

Owner/lessor.  Notwithstanding any other provision of the Florida Statutes or existing case law, the lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith; further, this paragraph shall be applicable so long as the insurance required under such lease agreement remains in effect.
* * * * * *
It is evident that the legislators recognized that under the dangerous instrumentality doctrine long-term lessors were liable for damages caused by drivers of the leased automobiles. However, they were sympathetic to some of the arguments made by GMAC in this case. By enacting section 324.021(9)(b), they were willing to provide relief under certain circumstances, but only if the leased automobile carried the requisite liability insurance. It is significant that even if the statute were applicable to this case, it would not help GMAC because the liability insurance on the automobile had lapsed when the accident occurred.
Kraemer, 572 So.2d at 1366-67. This language is clear in construing section 324.021(9)(b) as excepting "long-term automobile lessors from liability under the dangerous instrumentality doctrine under certain circumstances... ." Id. at 1366.
Subsequently, in Raynor, the Supreme Court characterized its opinion in Kraemer:
The Court also concluded, contrary to the district court's decision in Perry, that it was evident that by enacting section 324.021(9)(b), which provides relief for long-term lessors under certain circumstances, the Florida legislature recognized that under the dangerous instrumentality doctrine long-term lessors were liable for damages caused by drivers of leased automobiles.
Raynor, 574 So.2d at 1094. It is apparent that the Supreme Court has accepted the construction of section 324.021(9)(b) contained in this court's panel opinion of February 6, 1990. Under those circumstances, we have little choice but to adhere to the panels's opinion.
In addition, there is nothing in the Kraemer or Raynor opinions that would support a contrary view. The statements in Kraemer and Raynor reiterating the public policy foundations of the dangerous instrumentality doctrine pertain to the Court's rejection of any judicial exception to the doctrine for long-term lessors, as opposed to a legislatively created exception. We are, of course, bound to show great deference in the area of common law policy making to both the legislature and the Supreme Court. We do so here.
DELL, Judge, dissenting:
The clear separation of the dangerous instrumentality doctrine from the financial responsibility law and established principles of statutory construction compel my dissent from the majority's holding. The instant case factually falls within the purview of section 324.021(9)(b). The statute, however, as interpreted by the majority, fails to pass constitutional muster for two *226 reasons. First, the legislature failed to provide a clear expression of its intent to modify the dangerous instrumentality doctrine. See Carlile v. Game & Fresh Water Fish Commission, 354 So.2d 362 (Fla. 1977), reh. denied, (1978). Second, the legislature has not shown the requisite overpowering public necessity for the exemption from the dangerous instrumentality doctrine of owners of vehicles leased for more than one year, nor has it provided a reasonable alternative to those injured persons that would be affected by the limitation of such liability. If the legislature does not meet the latter threshold requirement, it is without power to abolish the public's right to redress under the doctrine. Kluger v. White, 281 So.2d 1 (Fla. 1973).
In my view, the plain language of the statute conditionally shifts the burden of compliance with the financial responsibility law from the lessor to the lessee. The statute makes it clear that the "exemption" found by the majority exists only so long as the lessee maintains the limits of liability insurance coverage required by the statute. Should the lessee fail to maintain such coverage, liability under the dangerous instrumentality doctrine reverts to the lessor. It does not seem reasonable that if the legislature intended to remove lessors from the purview of the dangerous instrumentality doctrine, it would do so in such a way as to exclude or include a lessor based on whether the lessee maintained the requisite insurance. Indeed, to condition the exclusion in such a manner would obviate the underlying policy considerations of the dangerous instrumentality doctrine. See Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla. 1959).
The majority opinion fails to discuss the well-settled mandates of statutory interpretation. When interpreting a statute which purports to modify or eliminate a longstanding common law doctrine or to deny a class of individuals equal protection under the law, our supreme court has admonished courts that, when laboring to interpret the new legislation, they must be guided by the rules of statutory construction. Carlile v. Game & Fresh Water Fish Commission, 354 So.2d 362 (Fla. 1977), reh. denied, (1978), established the standard for review of such a statute:
In determining the meaning of a statute we must look to the intent of the Legislature in enacting that statute. We are guided in this effort by established rules of statutory construction. In 1973 the Legislature passed Chapter 73-313, Laws of Florida, ... in order to authorize limited tort claims against the state. That statute is clearly in derogation of the common law principle of sovereign immunity and must, therefore, be strictly construed:
Statutes in derogation of the common law are to be construed strictly, however. They will not be interpreted to displace the common law further than is clearly necessary. Rather, the courts will infer that such a statute was not intended to make any alteration other than was specified and plainly pronounced. A statute, therefore, designed to change the common law rule must speak in clear, unequivocal terms, for the presumption is that no change in the common law is intended unless the statute is explicit in this regard. 30 Fla.Jur.Statute, Sec. 130.
Inference and implication cannot be substituted for clear expression. Dudley v. Harrison, McCready & Co., 127 Fla. 687, 173 So. 820 (1937).
Id. at 364. (Emphasis added)
Neither section 324.021(9)(a) nor (b) contain a clear expression by the legislature that it intended to modify the dangerous instrumentality doctrine. In fact, the title of the act amending the financial responsibility law states:
An act relating to motor vehicle liability insurance; creating the "Motor Vehicle Insurance Reform Act of 1988"; ... .
Ch. 86-229, Laws of Florida. I recognize that since the amendment also provides for the application of section 324.021(9)(b), "[n]otwithstanding any other provision of the Florida Statutes or existing case law ...", an argument can be made that the legislature, by its reference to "existing *227 case law," intended to encompass cases that relate to the common law dangerous instrumentality doctrine. However, the title to the act clearly limits its scope to motor vehicle liability insurance and, logically, the cases interpreting the financial responsibility law. Moreover, the statute makes no specific reference to the dangerous instrumentality doctrine.
It is also important to note that the majority opinion does not discuss the longstanding precedent in the state of Florida which differentiates the dangerous instrumentality doctrine from the financial responsibility law. In Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla. 1959), the supreme court resolved any question that might have existed concerning the liability of a lessor of an automobile under the doctrine:
On the fundamental issue, the simple but sound statement of the district court can be unequivocally endorsed:
When this defendant turns over an automobile to another for a price, he in actuality intrusts that automobile to the renter for all ordinary purposes for which an automobile is rented. The fact that the owner had a private contract or secret agreement with the renter cannot make such restrictions a bar to the rights of the public. The restrictions agreed upon do not change the fact that the automobile was being used with the owner's consent. Nor does it appear that the car was not being used for the purpose for which it was rented i.e., the pleasure, convenience or business of the renter.
... . To this we might add an observation that, whatever may have been the deviations from this course, the logical rule, and, we think, the prevailing rationale of the cases, is that when control of such a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse. The validity or effect of restrictions on such use, as between the parties, is a matter totally unrelated to the liabilities imposed by law upon one who owns and places in circulation an instrumentality of this nature.
Id. at 835-36; quoting Leonard v. Susco Car Rental System of Florida, 103 So.2d 243 (Fla. 3rd DCA 1958) (emphasis added). The legislature's enactment of the statutory financial responsibility law has also served well the public policy considerations of preventing uncompensated losses in conjunction with, but at the same time distinct from, the vehicle owner's common law obligations embodied in the dangerous instrumentality doctrine. The supreme court emphasized this distinction in Insurance Company of North America v. Avis Rent-A-Car System, Inc., 348 So.2d 1149 (Fla. 1977):
In our view, the financial responsibility law is only relevant to situations such as this insofar as it is necessary to protect the public from uncompensated losses arising from the use of motor vehicles. To this end the law requires motor vehicle owners to provide liability insurance coverage for the operation of their motor vehicles on the highways of this state. Independent of this insurance requirement is the common law obligation of vehicle owners under the dangerous instrumentality doctrine... .
... . Neither this statute [the financial responsibility law] nor the dangerous instrumentality doctrine asserts any interest of the state with respect to the allocation of risk among commercial enterprises or the responsibility of commercial enterprises to furnish more than minimal statutory coverage to their customers.
Id. at 1153-54 (emphasis added; footnote omitted).
I find little support in the excerpts from the legislative discussions cited by the majority opinion in support of the holding that "[t]he plain language of the statute and the legislative history indicate that section 324.021(9) was enacted to eliminate the liability of lessors under the dangerous instrumentality doctrine... ." The comments of Representative Upchurch and Representative Dudley show that the purpose of the amendment was to avoid duplication *228 of coverage.[3] The comments of Representative Woodruff show his concern that the statute might be interpreted to create a preferred class of vehicle owners under the dangerous instrumentality doctrine. A fair inference can be drawn from the excerpts cited by the majority that the legislators intended to modify the financial responsibility law to avoid duplication of insurance premium costs but that they were not sure whether or not the amendment would modify the dangerous instrumentality doctrine.
Next, the majority has not tested the threshold matter of the statute's constitutionality in the light of the mandates contained in Kluger v. White, 281 So.2d 1 (Fla. 1973), wherein the supreme court stated:
We hold, therefore, that where a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
Id. at 4.
At first blush, the imposition of the $100, 000/300,000 bodily injury liability limits upon the lessee as a condition for the exemption of lessors from the dangerous instrumentality doctrine may appear to provide the required alternative. In reality, the amendment significantly limits an injured party's rights of redress as compared to those persons protected by the dangerous instrumentality doctrine. The statute does not, in my view, provide a reasonable alternative to those people who may be so unfortunate as to be injured by a vehicle leased for a long-term as compared to a vehicle leased for a term of less than one year. Most importantly, the legislature has not shown, nor has it attempted to show, an overpowering public necessity for limiting the doctrine's application to long-term lessors of motor vehicles. I am not aware of any crisis in the automobile leasing industry that would justify such preferential treatment.
The supreme court's recent decisions in Kraemer v. General Motors Acceptance Corporation, 572 So.2d 1363 (Fla. 1990) and Raynor v. De La Nuez, 574 So.2d 1091 (Fla. 1991), do not, in my opinion, lay to rest the question of whether section 324.021(9)(b) exempts lessors of vehicles for more than one year from liability under the dangerous instrumentality doctrine. Neither of these cases involved claims that fell within the purview of the statute and, as the supreme court stated in a footnote contained in Kraemer,
GMAC does not suggest how it would be possible for this Court to adopt a rule which would differentiate long-term lessors from short-term lessors for purposes of liability under the dangerous instrumentality doctrine. Presumably, this would have to be decided on a case-by-case basis.
Id. at 1365, note 1.
I believe the majority has misplaced its reliance on dicta contained in Kraemer. In that opinion, Justice Grimes summarized the historical significance of the dangerous instrumentality doctrine and unequivocally differentiated a lease from a conditional sales contract.
The dangerous instrumentality doctrine seeks to provide greater financial *229 responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation. If Florida's traffic problems were sufficient to prompt its adoption in 1920, there is all the more reason for its application to today's high-speed travel upon crowded highways. The dangerous instrumentality doctrine is unique to Florida and has been applied with very few exceptions. We are loath to engraft upon this doctrine a further exception that would have such far-reaching consequences.

A lease is different from a conditional sales contract. See Cox Motor Company v. Faber, 113 So.2d 771 (Fla. 1st DCA 1959) (distinguishing a lease or bailment from a conditional sales contract). A sale has been consummated under a conditional sales contract even though the vendor holds legal title as security for the payment of the purchase price. On the other hand, a lease is an agreement for the delivery of property to another under certain limitations for a specified period of time after which the property is to be returned to the owner.
Id. at 1365-66. (Emphasis added; footnotes omitted). Notwithstanding this passage in Kraemer, the majority concludes in its final paragraph that "the legislative history indicates that leases exceeding one year are nothing more than alternative financing agreements which provide a tax advantage to the lessee. Therefore, there is a rational basis for the classification."
The Folmar lease contains an almost identical provision concerning the ownership of the vehicle as that in Kraemer. In Kraemer, the supreme court rejected GMAC's argument that the lease provided nothing more than a security device. It stated:
While GMAC seeks to characterize the transaction as nothing more than a security device, it did acquire title to the automobile and chose to lease it rather than to sell it. The fact that the transaction may have been structured in this manner for tax purposes does not warrant the creation of a wholesale exception to the dangerous instrumentality doctrine for long-term leases. A person who tailors a transaction in such a way as to gain tax benefits must accept the legal consequences which flow therefrom.
Id. at 1366.
I agree with the majority's observation that the supreme court stated in both Kraemer and Raynor that
[i]n 1986 the legislature did act to eliminate long-term automobile lessors from liability under the dangerous instrumentality doctrine under certain circumstances by the passage of [section 324.021(9)(b), Florida Statutes].
Kraemer at 1366; see also Raynor at 1092. Nevertheless, I note that neither case required an interpretation of section 324.021(9)(b) and that the supreme court did not address the statute's constitutional validity.
I also respectfully disagree with the majority's conclusion that Perry v. GMAC Leasing Corporation, 549 So.2d 680 (Fla. 2d DCA 1989) provides support for their conclusion that section 324.021(9)(b) is constitutional. It seems apparent from the supreme court's decisions in Kraemer and Raynor that notwithstanding the provisions of section 324.021(9)(a), the owner of a leased motor vehicle for more than one year remains liable under the dangerous instrumentality doctrine. In Perry, the court reasoned:
While, as plaintiff argues, the lease also specifically provides that the "lessor remains the owner of the vehicle," nonetheless the fact remains that the lessor retains no control over the operation of the motor vehicle. Accordingly, the lessor has under the lease essentially no more than naked legal title which is all that the above-quoted portion of the lease, which is otherwise stated to be included for federal income tax purposes, recognizes.
Id. at 682. The naked title discussion contained in Perry must also fail in view of *230 the supreme court's opinion in Kraemer. Since both of the primary reasons discussed in Perry as the court's bases for concluding that section 324.021(9) is constitutional conflict with Kraemer, I respectfully suggest that Perry does not support the constitutionality of section 324.021(9)(b).
In conclusion, it seems clear that the legislature intended to modify the financial responsibility law to avoid duplication of coverage but that if it intended to modify the dangerous instrumentality doctrine, the amendment did not meet the standards enunciated in Carlile v. Game & Fresh Water Fish Commission because it did not speak in clear, unequivocal terms. A mere indication of the legislative intent does not provide a sufficient basis to modify a longstanding and well-established common law doctrine. "Inference and implication cannot be substituted for clear expression." Carlile at 364, citing Dudley v. Harris, McCready & Co., 127 Fla. 687, 173 So. 820 (1937). More compelling, however, is the mandate of Kluger v. White, which cannot be dismissed summarily with the result that one class of vehicle owners obtains preferential status.
The summary judgment in favor of appellee should be reversed.
STONE, Judge, dissenting.
I concur with that portion of Judge Dell's dissenting opinion recognizing that section 324.021(9)(b) must fail constitutionally on the authority of Kluger v. White. Additionally, in my judgment the statute is unconstitutional as a deprivation of the right to equal protection of the law under the Florida and United States constitutions. The statute favors lessors by discriminating against those most seriously injured by a leased vehicle. There is not even a corresponding benefit to those less seriously injured, as presumably they gain little by substituting a $100,000 insurance policy for the equally solvent lessor.
NOTES
[1] This opinion appeared in the Southern Reporter showing the petition for rehearing as denied May 30, 1990. In fact, the outcome of the petition for rehearing was not decided until the instant en banc opinion issued this date.
[2] The language quoted above is the house debate on Senate Bill 902 which was culled by the appellees from a transcript of the tape of the floor debate. This court has not played the tape, but presumes the accuracy of the transcript since no protest was lodged by the appellants.
[3] However, an argument can be made that the statute fails to eliminate the need for duplicate insurance coverage. Would it be prudent for a lessor, on the contingency that the lessee will comply with section 324.021(9)(b), to refrain from acquiring and maintaining liability insurance? Obviously, any lapse in the lessee's coverage automatically shifts the financial burden to the lessor. If the lessor takes the precaution of maintaining insurance coverage, the statute's intent is obviated. Thus, in order to give expression to the statute, the lessor must subject itself to potentially serious financial consequences without the benefit of insurance protection.