675 So.2d 577 (1996)
David J. ADY, as personal representative of the Estate of Janet A. Ady, deceased, Petitioner,
v.
AMERICAN HONDA FINANCE CORPORATION, a/k/a AHFC, a California corporation, Respondent.
No. 85492.
Supreme Court of Florida.
March 21, 1996.
Rehearing Denied June 19, 1996.
*578 Arnold R. Ginsberg of Arnold R. Ginsberg, P.A., Miami, and James H. Nance of Nance, Cacciatore, Sisserson, Duryea & Hamilton, P.A., Melbourne, for Petitioner.
Matthew R. Danahy and Larry I. Gramovot of Shofi, Smith, Hennen, Jenkins, Stanley & Gramovot, Tampa, for Respondent.
Steven E.M. Hartz, Michael Fertig, Laura Thomas Rivero, and Christine L. Welstead of Akerman, Senterfitt & Eidson, P.A., Miami, for American Automobile Manufacturers Association and The Association of International Automobile Manufacturers, amici curiae.
WELLS, Justice.
We have for review Ady v. American Honda Finance Corp., 652 So.2d 415 (Fla.2d DCA 1995), which expressly and directly conflicts with the opinion in Gedert v. Southeast Bank Leasing Co., 637 So.2d 253 (Fla.4th DCA 1994). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We hold that for a title owner of an automobile to receive the statutory exemption from liability under the dangerous instrumentality doctrine provided in section 324.021(9)(b), Florida Statutes (1991), the statute requires the lessee to obtain and maintain effective insurance in the stated minimum amounts. Insurance obtained by the lessor which covers the lessee or the motor vehicle does not meet the requirements of the statute. Consequently, we approve the decision in Gedert, quash the Second District's decision in this case, and remand for proceedings consistent with this opinion.
The facts of the case are as follows. On March 8, 1993, there was a three-car automobile accident in Lee County, Florida, in which one of the drivers, Janet Ady, was killed. David Ady, as personal representative of Mrs. Ady's estate, filed a civil action against the other drivers, Robert J. Pelley and Robert C. Elder, alleging the negligence of either or both caused her death. Ady also sued American Honda Finance Corporation (AHFC), claiming that it was responsible to the estate because of the dangerous instrumentality doctrine. AHFC owned the car driven by Pelley and had leased the car to Pelley (lessee), for a term of sixty months.[1] *579 The lease agreement contained a provision that the lessee had to obtain insurance in the amounts required by section 324.021(9)(b).[2] However, the required insurance was not in effect at the time of the accident.
AHFC asserted the affirmative defense that it was exempt from liability under the dangerous instrumentality doctrine because of section 324.021(9)(b). AHFC conceded that the lessee never obtained insurance and that at the time of the accident there was no insurance in effect which had been obtained by the lessee. Nevertheless, AHFC asserted that it should receive the statutory exemption because the lessee was covered under an effective insurance policy which AHFC, the lessor, had obtained and which met the statutory minimum coverage amounts.[3] This policy provided insurance coverage in the amounts required by the statute to any lessee who did not obtain his own insurance pursuant to the requirements of the lease.[4] The trial court agreed and granted AHFC's motion for summary judgment and a final summary judgment in AHFC's favor.
On appeal, the district court affirmed. The court found it of no import that the lessee did not obtain the insurance required under the lease. Rather, the court focused on the fact that the vehicle involved in the accident and the lessee were insured to the required statutory limits under AHFC's policy. In support of this position, the court relied on Folmar v. Young, 591 So.2d 220 (Fla.4th DCA 1991), wherein the district court upheld the constitutionality of section 324.021(9)(b) and determined that where there were two lessees, the statute did not require each lessee to secure separate insurance. Consequently, the court held that AHFC was exempt from liability under the dangerous instrumentality doctrine.
The Ady court did note that its decision was in conflict with the decision of the Fourth District in Gedert v. Southeast Bank Leasing Co., 637 So.2d 253 (Fla.4th DCA 1994), which reached a result contrary to the Ady decision on similar facts. In Gedert, after the lessee's insurance had lapsed due to nonpayment, the lessee was involved in an accident. The lessor in Gedert had a contingent liability insurance policy which would apply in cases where the lessee's insurance policy had lapsed. In holding that the lessor's policy would not allow the lessor to receive the exemption of section 324.021(9)(b), the court looked to the plain language of the statute. The court found that because the statute did not have an exception to the requirement that the lessee have insurance in effect at the time of the accident, the lessor's contingency liability *580 policy would not allow the lessor to receive the benefit of the exemption.
Because we conclude that there must be strict compliance with the express provisions of section 324.021(9)(b) before a title owner of a motor vehicle can receive the benefits of this statutory exception to the dangerous instrumentality doctrine, we approve the Fourth District's decision in Gedert and quash the decision of the Second District in this case. We reach this conclusion by adhering to a narrow construction of the statute and the long-standing rejection of any judicial exception to the dangerous instrumentality doctrine in Florida. See Folmar, 591 So.2d at 225 (Anstead, J., specially concurring).
This Court first extended the dangerous instrumentality doctrine to automobiles in Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). In Southern Cotton Oil this Court stated:
[O]ne who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner.
Id. at 468, 86 So. at 638. Several years later, we applied the dangerous instrumentality doctrine to bailors. See Lynch v. Walker, 159 Fla. 188, 31 So.2d 268 (1947). Thereafter, we extended the doctrine to lessors, finding that a lessor's liability results from the owner's obligation to have the vehicle properly operated when it is by his authority on the public highway. See Susco Car Rental System v. Leonard, 112 So.2d 832 (Fla.1959).
This Court recently addressed the liability of long-term lessors under the dangerous instrumentality doctrine in Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363 (Fla.1990). In Kraemer, the lessor claimed that a long-term lease was more analogous to a conditional sales contract than a short-term rental agreement. As such, the lessor claimed that the lessee was the beneficial owner of the automobile and should be deemed the owner of the car for purposes of the dangerous instrumentality doctrine. In rejecting the lessor's position and finding long-term lessors of motor vehicles liable for injuries caused by the negligent operation of those vehicles, we stated:
The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised on the theory that one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation.... The dangerous instrumentality doctrine is unique to Florida and has been applied with very few exceptions. We are loath to engraft upon this doctrine a further exception that would have such far-reaching consequences.
Id. at 1365 (footnotes omitted). See also Raynor v. De La Nuez, 574 So.2d 1091 (Fla. 1991).
While not applicable to the parties in Kraemer, the legislature in 1986 passed chapter 86-229, Laws of Florida, creating a statutory exemption from liability under the doctrine for long-term lessors in certain circumstances. This section, currently codified as section 324.021(9)(b), provides:
(b) Owner/lessor.Notwithstanding any other provision of the Florida Statutes or existing case law, the lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100, 000/$300,000 bodily injury liability and $50,000 property damage liability, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith; further, this paragraph shall be applicable so long as the insurance required under such lease agreement remains in effect.
We recognized the effect of this statute in Abdala v. World Omni Leasing, 583 So.2d 330 (Fla.1991), wherein we upheld the constitutionality *581 of the statute[5] and held that a long-term lessor could come within the limited exception to the dangerous instrumentality doctrine "upon the satisfaction of the statutory preconditions." Id. at 334.[6]
As we have repeatedly stated, the dangerous instrumentality doctrine is uniquely part of Florida's common law; thus, section 324.021(9)(b) plainly is in derogation of the common law. It is a rule of statutory construction that a statute in derogation of the common law must be strictly construed. See Southern Attractions Inc. v. Grau, 93 So.2d 120 (Fla.1956). A court will presume that such a statute was not intended to alter the common law other than by what was clearly and plainly specified in the statute. See Carlile v. Game and Fresh Water Fish Commission, 354 So.2d 362 (Fla.1977). Moreover, any party seeking to receive the benefits of a statute in derogation of the common law must demonstrate strict compliance with the statute's provisions. See Florida Steel Corp. v. Adaptable Developments, Inc., 503 So.2d 1232, 1234 (Fla.1986).
Guided by these rules of construction, we conclude that a lessor's insurance policy cannot satisfy the requirements of section 324.021(9)(b) and exempt a lessor from liability under the dangerous instrumentality doctrine. Construing the statute, we agree with the district court in Gedert that the last phrase in the statute, "this paragraph shall be applicable so long as the insurance required under such lease agreement remains in effect," refers to the insurance policy that the lessee is required to obtain under the lease. Narrowly construed, the exemption thus only applies to a limited class of long-term lessors in instances in which there has been strict compliance with the requirements of the statute; and this statute requires that the lessee obtain and maintain effective insurance.
In this case, the lease states, "[d]uring this lease, you must provide and pay for the following insurance covering both you and the lessor." This provision, requiring the lessee to obtain the statutory minimum insurance coverage, satisfied one of the requirements of the statute. However, the fact that the lessee never obtained insurance made the statute inapplicable to AHFC because the insurance required by the lease never came into effect. Thus, AHFC was precluded from receiving the advantage of this narrow exemption from liability under the dangerous instrumentality doctrine. Since the statute did not apply to AHFC, the district court erred in affirming the granting of AHFC's motion for summary judgment.[7]
AHFC contends that this reading of the statute is unfair to lessors because lessees through fraud or deceit may represent that they have insurance when in fact they do not. *582 However, the statute addresses this concern by mandating that the lease "requires the lessee to obtain insurance acceptable to the lessor." Therefore, to comply with the statute, the lessor must initially determine whether the lessee's insurance coverage is acceptable. To protect itself, the lessor may choose not to authorize the use of the vehicle until it receives proper authentication of insurance[8] and may not allow continued usage without periodic evidence that the lessee's insurance remains in effect.
AHFC also contends that the technical distinction as to who obtains the insurance should not make a difference if in fact there is insurance covering the lessee or the motor vehicle. While the logic of glossing over a strict application of the statute is appealing, we cannot interpret the statute so broadly. Just as we have been loath in the past to create judicial exceptions to the doctrine, we must narrowly construe this statute to preserve the doctrine's strength. Moreover, we do not believe that a strict construction of this statute is unfair to long-term lessors because it places the onus on the lessor to police the actions of the lessee and to ensure that the lessee has effective insurance for the lessor to receive the benefit of the exemption. To the contrary, the legislature has carved out an exception to this long-standing doctrine for long-term lessors which no other class of motor vehicle owners in this state enjoys. Therefore, we conclude that fairness requires the exception to the doctrine be available to long-term lessors only when there is strict compliance with the statutory requirements.
Accordingly, we approve the decision in Gedert, quash the Second District's decision in this case, and remand for proceedings consistent with this opinion.
It is so ordered.
SHAW and KOGAN, JJ., concur.
ANSTEAD, J., concurs specially with an opinion.
OVERTON, J., dissents with an opinion, in which GRIMES, C.J., and HARDING, J., concur.
ANSTEAD, Justice, specially concurring.
The majority has accurately tracked the history and background of the limited legislative exception to the dangerous instrumentality doctrine for lessors of longtime motor vehicle leases. That limited exception came about only after this Court refused to recognize any such exception, and, as noted by the majority opinion, the exception is narrowly drawn and, as a limited exception to an important and still prevailing common law doctrine, must be narrowly construed by this Court. That is what the majority has done, and that is why I concur.
This does not mean that the view of the dissent might not be "better" policy. However, that is not what we are deciding. We are only deciding here the parameters of the exception actually created by the legislature in the aftermath of this Court's rejection of any exception to the common law doctrine. The legislative response was clear and unequivocal in permitting an exception when certain specific conditions were met. The legislature did not say that the exception would apply if the lessor secured a liability insurance policy for the vehicle or for the lessee. Rather, the legislature explicitly required that a policy be secured by the lessee and that the policy be kept in force for the exception to apply. The legislature could have simply provided that the exception be operative so long as any liability policy was *583 provided by anyone. That may make "good" policy, depending on one's view of the social and economic values relevant to the policy debate. However, that is not what the legislature did, and we, having refused to create any exception, are in no position to now second-guess the legislature's choice.
OVERTON, Justice, dissenting.
I dissent. There is no legal justification for the majority's interpretation of section 324.021(9)(b), Florida Statute (1993). In my view, the majority's construction of the statute places form over substance to obtain a desired result. Further, I believe that such a construction is clearly contrary to the intent of the legislature. The result of the majority's decision will be to increase the cost of obtaining a vehicle through a long-term lease arrangement, which has become a viable financing alternative to purchasing a vehicle outright and financing the vehicle through a mortgage lien.
The statute at issue reads as follows:
(b) Owner/lessor.Notwithstanding any other provision of the Florida Statutes or existing case law, the lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith; further, this paragraph shall be applicable so long as the insurance required under such lease agreement remains in effect.
§ 324.021(9)(b) (emphasis added).
In essence the legislature has acknowledged through this statute that a long-term lease is an alternative means of financing motor vehicles. Obviously, the intent of the statute is to reduce the overall insurance coverage costs to be borne by lessees by eliminating the duplication in coverage which occurs when both the lessor and lessee obtain coverage and the lessor, in turn, includes its costs for coverage in the cost of the lease. The statute requires a lessee to obtain substantially greater insurance coverage for a long-term leased vehicle ($100,000/$300,000) than the coverage required for an outright purchase financed by a mortgage lien ($10,000/$20,000). Thus, the statute has the effect of eliminating, in the cost of leasing a vehicle, the cost of the insurance coverage the lessor would have to pay for the vehicle in the absence of the statute. The construction placed on the statute by the majority substantially diminishes this purpose because lessors will now have to purchase insurance to protect themselves and the cost of that insurance will eventually be borne by the lessee.
The majority contends that its result is mandated due to the clear language of the statute. The operative language of the statute "requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability." I fail to understand the logic or the reasonableness of the majority's strained construction of the statute.
As I read the statute, a lessee is required to have insurance coverage on the vehicle that insures the lessee in the appropriate coverage amounts. The statute, however, in no way mandates that the lessee personally acquire the insurance coveragethe statute simply requires that "the lessee obtain insurance." For instance, if my son asks me to obtain and pay for insurance coverage for him on a vehicle that he is leasing and I do so, clearly he has obtained the necessary insurance coverage under the statute. Likewise, a policy obtained by the lessor on behalf of the lessee should satisfy the dictates of the statute.
In conclusion, the majority has seemingly construed the statute to provide a deep-pocket so that coverage is afforded much in excess of the $100,000/$300,000 limits in the statute. Without question, the practical result of the majority's construction will be to increase the cost of this alternative financing mechanism to consumers.
GRIMES, C.J., and HARDING, J., concur.
NOTES
[1] Pelley had originally leased the car from South Gate Motors, Inc., d/b/a Freeland Honda, a car dealer in Fort Myers. South Gate Motors subsequently sold the car and assigned this lease to AHFC, and AHFC was the owner of the car at the time of the accident. The lease specifically stated that "[t]he lessor owns the vehicle."
[2] The lease states:

C. VEHICLE INSURANCE:
During this Lease, you must provide and pay for the following insurance covering both you and the lessor:
(1) Public Liability Insurance that either covers up to $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, or has a combined single limit of $300,000 for bodily injuries and property damage for any one accident; and
(2) Physical Damage Insurance covering loss or damage to the vehicle, with deductibles of no more than $500 for collision and upset loss and $500 for comprehensive fire and theft loss.
The policy of Public Liability Insurance must show AHFC as an additional insured. The policy of Physical Damage Insurance must show AHFC as loss payee. You may choose to get the required coverages yourself or through any person. The policies must be written by an insurance company acceptable to Lessor. You agree to provide proof of insurance to Lessor upon request. No other types of insurance are required by Lessor.
[3] This insurance policy issued to AHFC by American Insurance contains Endorsement G, which states:

NO LESSEE OR PERMISSIVE USER WHO HAS INSURANCE AVAILABLE AS REQUIRED BY THE LEASE AGREEMENT IS AN INSURED. FOR LESSEES AND PERMISSIVE USERS WHOSE INSURANCE AS REQUIRED BY THE LEASE AGREEMENT IS NOT IN FORCE OR DOES NOT MEET THE REQUIRED LIMIT OF FLORIDA STATUTE 324.021(9)(B), THIS POLICY SHALL SUBSTITUTE FOR THE REQUIRED INSURANCE, UP TO THE MINIMUM LIMIT STATED IN FLORIDA STATUTE 324.021(9)(B). OUR LIMIT OF LIABILITY PART IV. C. DOES NOT APPLY TO LESSEES OR PERMISSIVE USERS.
[4] In fact, the limits of this policy were tendered to Ady.
[5] In Abdala, we addressed the 1987 version of section 324.021(9)(b) which read:

Notwithstanding any other provision of the Florida Statutes or existing case law, the lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability; further, this subsection shall be applicable so long as the insurance required under such lease agreement remains in effect, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith.
The wording of this statute was amended in chapter 88-370, Laws of Florida, to its current version. This clarification of the statute does not change our analysis in this case. See State ex rel. Szabo Food Services, Inc. v. Dickinson, 286 So.2d 529 (Fla.1973).
[6] We have also held that every long-term lessor is eligible to receive the benefits of this statutory exemption so long as the lease is for one year or longer and the lease requires the lessee to obtain insurance in the stated minimum amounts. See Aetna Casualty & Surety Co. v. Huntington National Bank, 609 So.2d 1315 (Fla.1992). In that case, however, we did not address whether the lessee was required to obtain and maintain the insurance required by the lease before the lessor would be exempt from liability.
[7] Additionally, we note that the district courts's reliance on Folmar v. Young, 591 So.2d 220 (Fla.4th DCA 1991), is misplaced. In Folmar, the court held that a lessor was exempt from liability under the doctrine when there were two lessees and only one had obtained the required insurance. Thus, the issue the court confronted was not whether the lessee's insurance policy could satisfy the statute but whether one of the lessees' insurance policies could provide the required coverage to the automobile.
[8] The record shows that AHFC does have procedures to protect itself from these situations. AHFC has a handbook entitled, "Retail Lease Plan Dealer Operating Guide." This handbook details the minimum required insurance limits for a lease and then states:

An AHFC Dealer Insurance Information and Verification Lease Form must be completed and forwarded with the lease transaction. The dealer must certify that insurance coverage has been placed and verified.
American Honda Finance Corporation must be shown as Additional Insured on liability policies and Loss Payee on physical damage insurance. The dealer should request that the insurance agent send a copy of the insurance policy and the loss payable endorsement as instructed on the Dealer Insurance Information and Verification Lease Form.