927 So.2d 955 (2006)
ESTATE OF Reinaldo VILLANUEVA, by and through Rosalina VILLANUEVA as Personal Representative, Appellant,
v.
T. Patton YOUNGBLOOD, Appellee.
No. 2D05-3112.
District Court of Appeal of Florida, Second District.
March 22, 2006.
Rehearing Denied May 17, 2006.
*956 Kennan George Dandar of Dandar & Dandar, P.A., Tampa, for Appellant.
T. Patton Youngblood, Jr., pro se.
ANDREWS, MICHAEL F., Associate Judge.
The Estate of Reinaldo Villanueva seeks review of a final summary judgment entered in favor of T. Patton Youngblood in this automobile accident case. Reinaldo Villanueva was killed when his car was hit by a 1996 Lexus LS400 owned by Youngblood and driven by one Teddy Aponte.[1] Because none of the exceptions to the dangerous instrumentality doctrine were established in the trial court as a matter of law, summary judgment in favor of Youngblood was improper. Accordingly, we reverse and remand for further proceedings.

FACTS
The record in the trial court established that Youngblood was given ownership of the Lexus, which had been titled solely in his wife's name, in a final judgment of dissolution that was entered on November 14, 2002. On December 4, 2002, Youngblood took the Lexus to Extreme Auto Sales & Accessories, Inc., and consigned it there for sale. Youngblood had discussions with one of Extreme Auto's principals, Teddy Aponte, about the sales price for the Lexus; however, there were no discussions between Youngblood and Aponte about the use of the Lexus while it was on consignment. Youngblood assumed that he was consenting to Extreme Auto using the Lexus solely for test drives by prospective purchasers, but he never *957 expressly limited Extreme Auto's use of the Lexus to this purpose. After dropping the Lexus off at Extreme Auto, Youngblood did not expect to regain possession of it; rather, he expected to receive solely the sales proceeds.
On December 24, 2002, Aponte took the Lexus from the Extreme Auto lot and drove it to his home. From there, he drove it to visit several friends and to purchase beer before heading to his sister's house for a Christmas party. On the way to the Christmas party, Aponte was involved in the accident that killed Mr. Villanueva. Aponte testified at deposition that he decided to take the Lexus home that night for safekeeping because there had been some incidents of vandalism on the Extreme Auto lot. Youngblood testified that he would never have consented to this type of use had he known of it.
After the accident, the Estate sued a number of parties, including Youngblood as the alleged owner of the Lexus. Following significant discovery, both the Estate and Youngblood filed motions for summary judgment. The Estate sought summary judgment based on the dangerous instrumentality doctrine and Youngblood's status as the owner of the Lexus. Youngblood sought summary judgment on three grounds: the "shop" exception to the dangerous instrumentality doctrine, the theft or conversion exception to the dangerous instrumentality doctrine, and Youngblood's alleged lack of consent to Aponte's use of the Lexus. The trial court granted summary judgment in favor of Youngblood without providing a specific reason for doing so, and the Estate appealed.

DANGEROUS INSTRUMENTALITY DOCTRINE
Florida's dangerous instrumentality doctrine was first applied to motor vehicles by the supreme court in Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). The doctrine imposes strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to another. Id. at 632. The doctrine was judicially adopted based on public policy concerns:
The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation. If Florida's traffic problems were sufficient to prompt its adoption in 1920, there is all the more reason for its application to today's high-speed travel upon crowded highways. The dangerous instrumentality doctrine is unique to Florida and has been applied with very few exceptions.
Aurbach v. Gallina, 753 So.2d 60, 62 (Fla. 2000) (quoting Kraemer v. Gen. Motors Acceptance Corp., 572 So.2d 1363, 1365 (Fla.1990)).
As the supreme court noted in Aurbach, there are very few exceptions to the dangerous instrumentality doctrine. The legislature has created a statutory exception for automobiles leased under long-term leases if the lessee meets certain insurance requirements. See § 324.021(9)(b), Fla. Stat. (2002). The courts have created three additional exceptions: the "shop" exception, see Castillo v. Bickley, 363 So.2d 792 (Fla.1978); the theft or conversion exception, see Hertz Corp. v. Jackson, 617 So.2d 1051 (Fla. 1993); and the "bare naked title" exception, see Aurbach, 753 So.2d at 62. In all *958 situations other than these, an owner who authorizes someone else to operate the owner's vehicle, whether by express or implied consent, has a nondelegable duty to ensure that the vehicle is operated safely. Aurbach, 753 So.2d at 62.
As is evidenced by these limited exceptions, the supreme court has been very hesitant to create new exceptions to the dangerous instrumentality doctrine. In Kraemer, the supreme court specifically refused to create a judicial exception for long-term lessees, noting that it was "loath to engraft upon this doctrine a further exception." 572 So.2d at 1365. Subsequently, the supreme court reiterated its "long-standing rejection of any judicial exception to the dangerous instrumentality doctrine in Florida." Ady v. Am. Honda Fin. Corp., 675 So.2d 577, 580 (Fla.1996). Thus, at this point, it appears that the supreme court has determined that the creation of any further exceptions to the dangerous instrumentality doctrine should be left to the legislature. Cf. Kraemer, 572 So.2d at 1367.

THE "SHOP" EXCEPTION
The Estate's primary contention on appeal is that summary judgment in favor of Youngblood was improper under the "shop" exception to the dangerous instrumentality doctrine because the facts of this case do not fall within the contours of that exception as explained by the supreme court. We agree.
In Castillo, the supreme court created the "shop" exception for those situations involving "automobile service agencies." 363 So.2d at 793. In doing so, the supreme court stated:
Our decision to pare back the dangerous instrumentality doctrine in service station and repairman situations stems from considerations of both social policy and pragmatism. An automobile owner is generally able to select the persons to whom a vehicle may be entrusted for general use, but he rarely has authority and control over the operation or use of the vehicle when it is turned over to a firm in the business of service and repair. Moreover, an owner often has no acceptable alternative to relinquishing control of his vehicle to a service center, after which he has no ability to ensure the public safety until the vehicle is returned to his dominion. Persons injured by the acts of garage and service repair agencies are not, however, without protection for their losses. They can and in logic should look to the perpetrator of the injury, who frequently is better able to use due care and to insure against the financial risks of injury.
Id. Since then, the supreme court has noted that the "shop" exception applies "only to the vehicle's negligent use during servicing, service-related testing, or service-related transport of the vehicle." Michalek v. Shumate, 524 So.2d 426, 427 (Fla.1988). Courts have generally refused to expand the scope of this exception, to the point of refusing to apply it when the vehicle is being driven to or from the repair facility rather than during the course of the repairs themselves. See, e.g., id. at 427 (refusing to extend the shop exception when a cleaning company employee had picked up the owner's car and was driving it to the cleaning facility); Grilli v. Le-Bo Props. Corp., 553 So.2d 352, 353 (Fla. 2d DCA 1989) (following Michalek and refusing to apply the shop exception to accident that occurred when cleaning company employee was returning car to owner); Lopez v. DeMaria Porche-Audi, 395 So.2d 199 (Fla. 3d DCA 1981).
In this case, Youngblood did not turn the Lexus over to an "automobile service agency" for repair or service. Rather, he consigned the Lexus to a used *959 car dealer for sale. While Youngblood argues that Extreme Auto was providing the service of selling the car, all of the cases applying the "shop" exception have involved servicing or repairing the motor vehicle itself  not providing a service to the owner. For the "shop" exception to retain its meaning, it cannot be extended to a bailment by the vehicle owner to any entity other than a service or repair shop. Instead, it must be limited to those situations specifically contemplated by the supreme court. Thus, because the facts of this case do not fall within the "shop" exception to the dangerous instrumentality doctrine, summary judgment in favor of Youngblood on this basis was improper.
We do agree with Youngblood that some of the policy reasons behind the "shop" exception apply equally to the consignment of a car for sale. In both cases, the owner turns the car over to another and relinquishes control to that entity. In both cases, the owner has no ability to ensure the public safety unless and until the car is returned. In both cases, it is foreseeable that the vehicle will be operated on the public roads for test drives, whether by a repairman testing the vehicle or by a prospective purchaser. Further, in both cases, the perpetrator of the injury, i.e., the repair firm or the dealership, is in the better position to use due care and to insure against the financial risks of injury.
However, we disagree with Youngblood that this court should take this opportunity to extend the "shop" exception to consignment-for-sale situations. As this court has previously stated in a comparable context:
[W]e believe precedent requires use to apply the impact rule in this case, absent some recognized exception. In Tanner [v. Hartog], 696 So.2d 705 [(Fla.1997)], the supreme court reaffirmed the continued viability of the rule and noted that any exceptions to the rule must be considered on a case-by-case basis. If a new exception to the impact rule is to be drafted, we believe the supreme court is the most appropriate body to do so.
Holt v. Rowell, 798 So.2d 767, 772-73 (Fla. 2d DCA 2001), reversed on other grounds, 850 So.2d 474 (Fla.2003). In this case, given the supreme court's own stated reluctance to create new exceptions to the dangerous instrumentality doctrine, see Ady, 675 So.2d at 580, we believe that if the "shop" exception is to be extended to new factual situations, the supreme court is the most appropriate body to do so. Accordingly, we decline Youngblood's invitation to extend the "shop" exception to the facts presented in this case. Having declined to do so, we must reverse the summary judgment granted on this basis.

THEFT OR CONVERSION EXCEPTION
Perhaps recognizing that the "shop" exception does not apply to this case, Youngblood argues in the alternative that the trial court properly entered summary judgment in his favor under the theft or conversion exception to the dangerous instrumentality doctrine. However, it is clear from the record that there are genuine issues of material fact concerning whether the use of the Lexus by Aponte constituted a theft or conversion, thus rendering summary judgment improper on this basis as well.
"Conversion occurs when a person asserts a right of dominion over chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession.... The question of whether a vehicle has been the subject of a conversion is a factual one based on the distinct circumstances of each individual case." Ming v. Interamerican Car Rental, Inc., 913 So.2d 650, 654 (Fla. 5th DCA 2005).
*960 Here, it is undisputed that Youngblood consigned the Lexus to Extreme Auto and the accident occurred while Extreme Auto had legal possession of the Lexus pursuant to the consignment. At that time, Youngblood had no expectation of ever possessing the Lexus again. Instead, he expected Extreme Auto to retain possession of the Lexus until it was sold. Therefore, Aponte's use of the Lexus while it was consigned to Extreme Auto did not deprive Youngblood of his right of possession.
In addition, there are factual disputes as to whether Aponte intended to deprive Youngblood of possession. While Youngblood denies that he gave permission for anyone from Extreme Auto to drive the Lexus for other than test drive purposes, it is undisputed that Youngblood did not expressly prohibit Aponte from using the Lexus. Further, Aponte testified in his deposition that, at the time of the accident, he was taking the Lexus to his residence for safekeeping overnight because there had been vandalism at the Extreme Auto car lot. If this testimony is true, Aponte had no intent to deprive Youngblood of his ownership rights. While Youngblood questions the credibility of this testimony, questions of credibility are to be resolved by a jury  not by the court on summary judgment. Ming, 913 So.2d at 652. Therefore, because of these issues of material fact, summary judgment was inappropriate under the theft or conversion exception to the dangerous instrumentality doctrine.

LACK OF CONSENT
Finally, Youngblood contends that even if neither exception to the dangerous instrumentality doctrine applies, the summary judgment should nevertheless be affirmed because the Estate failed to prove that he had knowledge of or had consented to Aponte's use of the Lexus. This argument has no merit under the facts presented here.
When dealing with the dangerous instrumentality doctrine, the supreme court has broadly defined the scope of the necessary consent so as to effectuate the purposes of the doctrine.
[W]hen control of such a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse. The validity or effect of restrictions on such use, as between the parties, is a matter totally unrelated to the liabilities imposed by law upon one who owns and places in circulation an instrumentality of this nature.

Susco Car Rental Sys. of Fla. v. Leonard, 112 So.2d 832, 835-36 (Fla.1959) (emphasis added). Thus, in Susco, even though the renter of a vehicle agreed that he would be the only driver and the accident occurred while someone else was driving the rented vehicle, Susco, as the owner, remained liable under the dangerous instrumentality doctrine because it had voluntarily relinquished control of the vehicle to the renter. While the restrictions on use agreed to between Susco and the renter might have had some effect on their respective liabilities to each other, those restrictions had no effect on Susco's liability, as the owner of the vehicle, to an injured third party. See also Stupak v. Winter Park Leasing, Inc., 585 So.2d 283, 284 (Fla. 1991).
Similarly here, the evidence is undisputed that Youngblood gave permission to Extreme Auto to operate the Lexus. The only question is the scope of that permission. While Youngblood testified that he did not explicitly give permission for Extreme Auto to use the Lexus for any reason other than test drives by prospective purchasers, that restriction on use between *961 the parties, assuming it was proven to exist, does not affect Youngblood's liability, as the owner of the Lexus, to injured third parties such as the Estate. Therefore, even if the trial court had entered summary judgment on this basis, such a judgment could not stand.
Reversed.
WHATLEY and CASANUEVA, JJ., Concur.
NOTES
[1] In the trial court, Youngblood contended that he was not a legal owner of the Lexus and therefore was not subject to any liability that might be imposed on a vehicle owner under the dangerous instrumentality doctrine. The trial court found that there were genuine issues of material fact as to the ownership of the Lexus and refused to grant summary judgment on this basis; thus, the issue of the ownership of the Lexus is not before this court in this appeal. Accordingly, for purposes of this opinion, we assume that Youngblood was the owner of the Lexus and was subject to the dangerous instrumentality doctrine.