SHEPHERD, J.
Meritplan Insurance Company appeals a nonfinal order enjoining the insurer to pay disputed sums under a homeowners’ insurance policy to their insureds, Juan E. Perez and his wife, Anna P. Perez, prior to a final determination of the case. We have jurisdiction. Fla. R.App. P. 9.130(a)(3)(B); Bistricer v. Oceanside Acquisitions, LLC, 937 So.2d 786 (Fla. 2d DCA 2006)(stating that an order directing action on the part of the plaintiff was treatable as a nonfinal order granting or continuing an injunction). We conclude that the trial court abused its discretion in entering the order under review, and therefore reverse and remand with instructions.

I. FACTS

A. The Loss and the Insurance Policy
On July 25, 2003, Juan E. Perez and his wife, Ana P. Perez, were the victims of personal property theft from their home. At the time of the theft, the Perezes were insured under a homeowner’s insurance policy issued by Meritplan. The insuring clause of the policy reflects that the policy is an “actual cash value” (ACV) policy. Section I — Conditions, Paragraph 3, of the policy states:
3. Loss Settlement. Covered property losses are settled as follows:
a. Property of the following types:
(1)Personal property
[[Image here]]
at actual cash value at the time of loss but not more than the amount required to repair or replace.
(Emphasis added.)
In addition, as is customary in the industry, the policy places certain duties or conditions of recovery on the insured.
Section I — Conditions, Paragraph 2, of the Meritplan policy states:
2. Your Duties After Loss. In case of a loss to covered property, you must see that the following are done:
[[Image here]]
e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
f. As often as we reasonably require:
(1) Show the damaged property;
(2) Provide us with records and documents we request and permit us to make copies; and
(3) Submit to examination under oath, while not in the presence of any other “insured,” and sign the same;
g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
[[Image here]]
(6) The inventory of damaged personal property described in 2.e. above[.]
(Emphasis added.)
Finally, Section I — Conditions, Paragraph 6, of the policy contains a nonjudicial, alternate dispute resolution clause for resolution of any difference that might arise between an insured and insurer over the amount of the ACV that might be payable under the policy:
6. Appraisal. If you and we fail to agree on the amount of the loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the *773 other. The two appraisers will choose an umpire.... The appraisers will separately set the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.
B. The Endorsement
Modifications to insurance policies usually are accomplished through attachments to the policy known as “endorsements.” Some endorsements are statutorily required. See, e.g., Ady v. Am. Honda Fin. Corp., 675 So.2d 577 (Fla.1996); Prudential Prop. & Cas. Ins. Co. v. Bonnema, 601 So.2d 269 (Fla. 5th DCA 1992). Others are optional to the insured for an additional premium. Attached to the insurance policy at issue here is an optional “Personal Property Replacement Cost” endorsement purchased by the Perezes for an additional premium. This endorsement affords the Perezes an additional contractual right — a 180-day period within which to elect to replace any covered item — and, if such an election is made, receive payment for the full replacement cost of the item replaced. The Perezes purchased this option subject to “all other provisions of [the] policy.” Section I, Paragraph 2, of the endorsement states:
2. REPLACEMENT COST

The following loss settlement procedure applies to all property insured under this endorsement:

a.We will pay no more than the least of the following amounts:
(1) Replacement cost at the time of loss without deduction for depreciation.
[[Image here]]
b. When the replacement cost for the entire loss under this endorsement is more than $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is complete.
c. You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

All other provisions of this policy apply.

(Emphasis added.)
A cursory reading of the policy reveals that it contemplates a two-tier loss settlement procedure: (1) an initial claim for the ACV of a covered loss after taking into account applicable deductibles and special limitations of liability for certain types of losses, such as jewelry, securities, watercraft, and firearms; and (2) a second, likely later, claim filed within 180 days of the date of loss for recovery.of the total replacement cost of any covered property the insured has during the period actually replaced.[1] Upon a careful review of the record, we conclude that, in an apparent misunderstanding of the Meritplan insurance agreement, its nature, conditions, and structure, the Perezes filed suit prematurely and led the trial court to reversible error. A full recitation of the claim and litigation history of this case will make clear how this occurred and why we are *774 compelled to reverse the injunctive order requiring payment by Meritplan.
C. The Claim
The pre-suit adjustment period for this claim was brief. Within a few months of the theft, the Perezes engaged a public adjuster, Randy Paul, of Lesser & Company, to represent them in the presentation of their claim to Meritplan. On December 4, 2003, Paul submitted a Sworn Proof of Loss on behalf of the Perezes in an “amount claimed” of $82,684 “with limits applied.” On December 15, 2004, Merit-plan Claims Representative David Moore rejected the proof of loss as insufficient. On March 4, 2004, apparently after an investigation and analysis of his own, Moore forwarded a proposed first-tier proof of loss to Paul, evaluating the ACV for claim purposes at $21,574. When calculating that value, Moore accepted Paul’s “amount claimed” as the “replacement cost” estimate for purposes of the policy. Moore further advised:
Mr. Perez may recover the [remaining] refundable depreciation by sending us receipts and invoices documenting the items were replaced. Should you replace or repair the damage for less money than the amount allowed, we will pay the amount owed based on your actual cost. Under the terms of your policy, you have 180 days from the date of actual cash value payment on the loss to file this additional claim.
(Emphasis added.)
Paul responded to Moore on March 8, 2004:
Thank you for your correspondence of March U, %00⅛ offering $21,574.00 as an ACV payment. Please be advised that I have contacted Mr. Perez and he is extremely upset at the amount being offered .... He advised me that he will take between $⅛0,000.00 and [$⅛5,000][2] as an ACV payment. After reviewing this correspondence, please advise me as to your company’s position.... We would like to avoid going to appraisal, but will have no choice unless you increase your offer.
(Emphasis added.)
On April 4, 2004, — less than a month after Paul mailed his letter to Meritplan and before Meritplan responded — counsel for the Perezes appeared on the scene. Rather than pursue the appraisal option threatened by the Perezes’ professional adjuster and required by the plain language of the insurance policy, the Perezes’ counsel sued Meritplan. Although counsel later claimed he was unaware of the exchanges between Paul and Moore when he filed suit, the action he filed sounded in two counts: (1) Count I, a plain vanilla “Breach of Contract” count “for the proper amount of damages” due under the policy; and (2) Count II, a “Petition to Compel Appraisal & Appointment of Neutral” under the “Appraisal” provision of the insurance policy. Notably, the complaint contained no mention of a second-tier replacement cost claim.
D. The Litigation
In response to the complaint, Meritplan did the unexpected — it offered, through counsel, to resolve the first-tier claim through appraisal. After first agreeing in writing to the Meritplan offer, the Perezes’ counsel had second thoughts, reneged on the agreement, and filed an Amended *775 Complaint,[3] abandoning its Petition for Appraisal, but amending the Breach of Contract count to allege that Meritplan, by its March 4, 2004 letter, had waived all conditions precedent to payment under the policy. Presumably the Perezes’ counsel remained unaware of the Perezes’ public adjuster’s March 8, 2004 rejection of Mer-itplan’s March 4 offer. These occurrences were met by Meritplan simultaneously filing a Motion to Dismiss and to Compel Appraisal. Meritplan argued that the Per-ezes’ agreement to proceed to appraisal was the enforceable, contractually required, and legally proper way to resolve the differences then existing between the parties over the ACV of the loss. With the Perezes’ counsel’s support, after a non-evidentiary hearing, the trial court denied Meritplan’s motion, and, on June 10, 2004, sua sponte ordered, “The defendant shall tender the ACV (undisputed portion) and pay up to the agreed amount RCV [replacement cash value] upon receipts.” Despite the questionable validity of the trial court’s sua sponte directive, see Epic Metals Corp. v. Samari Lake E. Condo. Ass’n, 547 So.2d 198, 199 (Fla. 3d DCA 1989)(stating that “a trial court violates a litigant’s due process rights when it expands the scope of a hearing to address and determine matters not noticed for hearing”), Meritplan paid the Perezes $21,574, and, for the first time, began receiving replacement cost receipts.
As the receipts began to trickle in, Mer-itplan sought to verify them through requests for a supporting second-tier proof of loss, additional documentation, and examinations under oath of their insureds. The Perezes’ counsel refused these requests and filed a Motion to Enforce Compliance with the trial court’s sua sponte directive, and added to it a Motion for Protective Order and Motion for Sanctions. On November 10, 2004, at yet another non-evidentiary hearing, over Meritplan’s objection, the court again provided relief to the Perezes, ordering:
1. Plaintiffs Motion to Comply with Court Order Dated June 10, 2004 be and the same is hereby GRANTED. The Defendant shall tender payment within 30 days on any and all items whereby receipts have been provided to date and pay the remaining refundable depreciation withheld upon receipt of receipts up to the amount of SIXTY-ONE THOUSAND ONE HUNDRED AND FOUR AND NO/100 DOLLARS (61,104.00).
2. Plaintiffs’ Motion for Protective Order and for Sanctions is GRANTED, in part, in that the Plaintiffs/Insureds shall not be required to attend an Examination Under Oath until such time as the Defendant, Meritplan Insurance Company, has made full payment of the refundable depreciation.
[[Image here]]
4. Defendant’s Motion to Compel Attendance at Examination Under Oath is GRANTED, in part, in that after the Defendant has tendered full payment of the refundable depreciation, the Plaintiffs shall each be made available for an Examination under Oath.
Shortly after this order was entered, Meritplan received information that some of the receipts reflected items that had been ordered but not picked up; some receipts represented orders that had been cancelled; and evidence that the Perezes may have engaged in fraud on Meritplan by failing to actually replace the stolen *776 items as required under the policy.[4] Counsel for Meritplan contacted the Per-ezes’ counsel, who claimed he would inquire. His response was a Second Motion to Enforce. A few days later, Meritplan filed a Motion to Vacate the Orders dated June 10, 2004, and November 10, 2004, and to amend its answer to assert the defense of insurance fraud. After a final non-evidentiary hearing, the court denied the motion to vacate the June 10 and November 10 orders and granted the Perezes’ motion as follows:
Plaintiffs shall submit receipts for replacement items and the Defendant shall reimburse Plaintiffs within forty-eight (48) hours of receipt. Defendant shall have the right to make out the checks directly to the retailer and the invoices shall reflect that the items are non-refundable and/or non-returnable and all sales are final. Further, Defendant shall have the opportunity to perform one inspection of Plaintiffs’ home to confirm receipt of all replacement items in accordance with the above.
All conditions of the insurance policy having been effectively vitiated by these orders, Meritplan seeks relief before this court.

II. ANALYSIS

Stated succinctly, from the time the original complaint was filed, the Perezes’ position has been that, contrary to the express provisions of the policy, they are entitled to a check for the total replacement value of the loss, and that their obligation was to do nothing more than produce receipts.
While we recognize the good intentions of the trial court in seeking to resolve this matter through a series of injunctive orders, this case is a simple case for breach of an insurance contract. When, at the outset, Meritplan sought appraisal of the only issue existing between the parties at the time — the ACV of the loss — the Per-ezes’ counsel opposed appraisal on the ground that Meritplan and the Perezes’ adjuster had reached a settlement that only needed to be enforced. A cursory review of the parties’ correspondence prior to the Perezes’ filing of the lawsuit indicates that such was not the case. Nevertheless, the trial court denied the motion for appraisal and, thereafter, with the Per-ezes’ encouragement, sought to resolve this matter through the injunctive process.
Injunctive remedies do not ordinarily lie where there is an adequate remedy at law available to the complaining party. See DiChristopher v. Bd. of County Comm’rs, 908 So.2d 492, 497 (Fla. 5th DCA 2005). That is particularly so where, as here, such relief is entered without an evidentiary basis. See Bistricer, 937 So.2d at 787 (reversing injunction entered without evidentiary hearing and lacking factual basis). By granting the injunction in this case, the trial court vitiated Meritplan’s contractual rights prior to a trial on the merits. In so doing, the trial court abused its discretion. See Net First Nat’l Bank v. First Telebanc Corp., 834 So.2d 944, 950 (Fla. 4th DCA 2003)(“Although a trial court has broad discretion in granting in-junctive relief, it is an extraordinary remedy that ‘requires a clear legal right, free from reasonable doubt.’ ” (quoting Dania Jai Alai Int’l, Inc. v. Murua, 375 So.2d 57, *777 58 (Fla. 4th DCA 1979))). A trial court cannot allow itself to become the adjuster of the claim. See Union Am. Ins. Co. v. Haitian Refugee Center/Sant Refijie Ayisyin, Inc., 858 So.2d 1076, 1078 (Fla. 3d DCA 2003)(courts cannot engage in “judicial rewriting” of insurance policies). That is effectively what the trial court was induced to become here. Nor can the Per-ezes profit through their advancement below of their own misconceptions of the nature, conditions, and structure of the insurance agreement they made with Meritplan.
We reverse and remand the order on appeal with directions that the court permit Meritplan to amend its complaint to allege the defense of insurance fraud on the part of the Perezes in this case and such other defenses as it might have to the Perezes’ breach of contract claim. We find no basis for the employment of the injunctive process to afford relief to the Perezes on the record before us. We express no opinion on the merits of the breach of contract action.
Reversed and remanded with directions.

. Because the insured already is entitled to receive and in most cases has received, the ACV of a covered item at the time he or she files a second-tier actual replacement cost claim, the total replacement cost payment under the policy endorsement is the difference between the actual replacement cost of the item replaced and the ACV already paid or scheduled to be paid for that item. As one logically would anticipate, the policy prohibits double recoveries and windfalls. ,

. Paul’s letter actually says ''between $40,000 and $350,000.” Because, without explanation in the record, the parties appear to treat Paul’s counter-offer on behalf of the Perezes to be "between $40,000 and $45,000”, we assume the letter was inadvertently inaccurate. This discrepancy is not critical to our analysis of this case.

. The Amended Complaint purportedly was filed pursuant to Florida Rule of Civil Procedure 1.190(a), which permits a plaintiff to amend his complaint as of right prior to the filing of a responsive pleading.

. Sections I and II — Conditions, Paragraph 2, of the policy contains the following provision:
2. Concealment or Fraud. The entire policy will be void if, whether before or after the loss, an “insured” has:
a. Intentionally concealed or misrepresented any material fact or circumstance;
b. Engaged in fraudulent conduct; or
c. Made false statements;
relating to this insurance.