ALTENBERND, Judge,
Concurring in part and dissenting in part.
I agree with the majority that the Graves Amendment, 49 U.S.C. § 30106, is not unconstitutional and that section 324.021(9)(b)(l) is not excepted from this federal preemption statute by virtue of the exception stated in subsection (b)(1) of the Graves Amendment. On the other hand, I conclude that section 324.021(9)(b)(l), when examined in conjunction with Florida’s unique dangerous instrumentality doctrine, is effectively a statute imposing liability for failure to meet liability insurance requirements. It appears to me to be the type of statute that Congress intended to allow states to enact, as provided within subsection (b)(2) of the Graves Amendment. It fulfills both the purposes and functions of the type of statute that Congress would allow a state to enact under the common law of the other forty-nine states.
There does not appear to be any serious dispute that a state could enact a statute that provided:
Lease car companies doing business in this state shall ensure that either the lessee or the lease car company provides a policy of liability insurance of not less than $500,000 combined property damage liability and bodily injury liability for each lease car operated in this state. Failure to provide this insurance shall render the lease car company vicariously liable for all damages caused by the negligence of the operator of the lease car.
Such a statute would squarely fit within the exception of subsection (b)(2) of the Graves Amendment. Under the common law of apparently every state except Florida, such a statute would be necessary to make the owner vicariously liable for the negligent acts of the operator because the common law did not impose such liability. See, e.g., Morris v. Snappy Car Rental, Inc., 84 N.Y.2d 21, 614 N.Y.S.2d 362, 637 N.E.2d 253, 254-55 (1994) (explaining that New York’s legislature enacted Vehicle and Traffic Laws section 388 to change the common law rule and to make a vehicle’s owner vicariously liable for the negligence of a person operating the car with the permission, express or implied, of the owner); see also 8 Am.Jur.2d Automobiles and Highway Traffic § 403 (2007).
If one examines the history of the dangerous instrumentality doctrine and the efforts of the rental and car leasing companies to obtain a special exemption from that doctrine, it becomes more clear that section 324.021(9)(b)(l) is the equivalent of the above-quoted hypothetical statute.
I. THE DEVELOPMENT OF THE DANGEROUS INSTRUMENTALITY DOCTRINE IN FLORIDA PRIOR TO 1989
Judge Hodges, in his opinion in Garcia, provided an excellent, brief description of Florida’s development of the dangerous *1207 instrumentality doctrine. I repeat that description here.
Florida’s vicarious liability doctrine as it pertains to lessors of motor vehicles is largely a creation of common law, and is otherwise known as the “dangerous instrumentality doctrine.” The dangerous instrumentality concept was first applied to motor vehicles by the Florida Supreme Court in 1920. Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). The doctrine “imposes strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to another.” Estate of Villanueva ex rel. Villanueva v. Youngblood, 927 So.2d 955 (Fla.Dist.Ct.App.2006); see also Southern Cotton, 86 So. at 687. The dangerous instrumentality doctrine was judicially adopted based on public policy concerns:
The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation. If Florida’s traffic problems were sufficient to prompt its adoption in 1920, there is all the more reason for its application to today’s high-speed travel upon crowded highways. The dangerous instrumentality doctrine is unique to Florida and has been applied with very few exceptions.
Aurbach v. Gallina, 753 So.2d 60, 62 (Fla.2000) (quoting Kraemer v. Gen. Motors Acceptance Corp., 572 So.2d 1363, 1365 (Fla.1990)).
The Florida Supreme Court extended the dangerous instrumentality doctrine to lessors, thereby making them vicariously liable for the lessee’s negligent operation of the motor vehicle, in 1959. Susco Car Rental System v. Leonard, 112 So.2d 832 (Fla.1959).
Garcia, 510 F.Supp.2d at 827. There is, incidentally, no question in my mind that, without the legislative enactment in section 324.021(9)(b), the Florida law related to the dangerous instrumentality doctrine would be preempted by the Graves Amendment.
II. THE DEVELOPMENT OF THE FINANCIAL RESPONSIBILITY STATUTES IN FLORIDA PRIOR TO 1989
Judge Gross, in Vargas, has done an excellent job describing the history and the nature of Florida’s Financial Responsibility Act, chapter 324, Florida Statutes. Vargas, 993 So.2d at 618-21. I am inclined to believe, however, that financial responsibility laws are not the true focus of the issue presented by this case. Unlike many states where financial responsibility laws were enacted in conjunction with laws establishing some vicarious liability of motor vehicle owners, that vicarious liability had existed in Florida as a result of the dangerous instrumentality doctrine for more than a generation when the Florida Legislature first addressed the idea of financial responsibility. These laws do not create any compulsory insurance requirements for owners of typical cars whose drivers have been responsible. The most significant sanction imposed under these statutes is not the liability of the owner (which already existed in Florida under the dangerous instrumentality doctrine), but rather the loss of a driver’s license or registration for someone who has not been financially responsible in the past. See § 324.051, Fla. Stat. (2008).
*1208 The significance of Florida’s financial responsibility statutes was altered and reduced with the creation of no-fault automobile insurance. The definition of motor vehicle was amended in 1977 to provide that an automobile insured with no-fault insurance was not included within the definition of motor vehicle for purposes of financial responsibility in many instances. See Ch. 77-468, § 6, at 2061, Laws of Fla.
While financial responsibility statutes in Florida may have been a regulatory annoyance for rental and lease car companies, the real complaint of these companies was with Florida’s dangerous instrumentality doctrine because it could make these large corporations subject to unlimited judgments for the damage and injury caused by their cars in Florida.
III. THE LEGISLATIVE RESPONSE IN 1986 IN FLORIDA ADDRESSING THE LIABILITY OF LONG-TERM LESSORS
In 1986, the Florida Legislature created section S24.021(9)(b) to exempt lease car companies from the dangerous instrumentality doctrine so long as the lessee maintained certain levels of liability insurance. Ch. 86-229, § 8, Laws of Fla. This bill did not deal with insurance or financial responsibility in general; it amended statutes affecting lessors of motor vehicles. This version of the statute provided no relief to rental car companies as opposed to long-term lessors. It also did not provide the option of a blanket liability policy. That language was added later by chapter 88-370, Laws of Florida, as a response to cases in which the statute was read literally to require a policy provided by the lessee in order for the lessor to escape the dangerous instrumentality doctrine. See Ady v. Am. Honda Fin. Corp., 675 So.2d 577 (Fla.1996).
This statute was odd in 1986, and it remains odd today in at least two respects. First, it purports to be a definition of “owner/lessor” for a statutory chapter dealing with financial responsibility, when in reality it is far more than a definition. Second, although one might expect that it was only a definition for purposes of Florida’s statutory financial responsibility requirements because it is in chapter 324 and not in chapter 768, it actually establishes a major limitation on a common law negligence cause of action for the benefit of a narrow class of defendants — those businesses who lease motor vehicles.[5]
After the enactment of this statute, a business that leased automobiles in Florida and complied with these statutory provisions was still the owner of the vehicles for many purposes, but it was not “deemed” the owner for either financial responsibility or for liability under the dangerous instrumentality doctrine. Examined from a practical or functional perspective, the legal owner of the leased or rented motor vehicle had no monetary exposure for risks associated with the use or operation of the motor vehicle so long as the prescribed insurance was in place. The “penalty” for failure to maintain the insurance was a return to unlimited liability under the dangerous instrumentality doctrine. See Ady, 675 So.2d at 581 (holding lessor was not entitled to the statutory exemption from the dangerous instrumentality doctrine where lessee failed to satisfy the requirement of section 324.021(9)(b)).
I admit that this statute in 1986 and today does not compel leasing companies to have minimum limits of insurance cover *1209 age. I am not convinced it is necessary for the statute to compel coverage to fit within the second exception to the Graves Amendment. Subsection (b)(2) exempts state laws “imposing liability on business entities engaged in the trade or business of ... leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law.” In Florida, the liability was imposed by common law and the statute provides an insurance option to avoid that liability. If a leasing company fails to meet the liability insurance requirements in section 324.021(9)(b)(l), then Florida common law as explained in Ady and earlier cases will impose liability on that business. In combination, the common law and section 324.021(9)(b)(l) fits squarely within exception (b)(2) of the Graves Amendment.
I believe that the plain language of exception (b)(2) allows Florida to continue to impose liability on lease car companies that fail to provide the insurance designated in section 324.02(9)(b)(l). If I were to engage in statutory interpretation of the Graves Amendment, the case law encourages a narrow reading of federal preemptive statutes in fields traditionally occupied by the states. See, e.g., Medtronic, Inc. v. Lohr, 518 U.S. 470, 484-86, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). Courts are encouraged to seek out the purpose of such a statute. Id. at 485-86, 116 S.Ct. 2240. I would assume that Congress intends express exceptions to preemptive statutes to be fully enforced. The clear purpose of the Graves Amendment is to prevent a multitude of different liability rules among the states for lease and rental car companies that operate throughout the country while allowing the states to impose liability on lease car companies that do not provide the insurance designated by state law. It seems to me that section 324.021(9)(b)(l), in conjunction with Florida’s dangerous instrumentality doctrine, accomplishes precisely that purpose in Florida, and I see no basis to rule that Congress has preempted this sound state law.

. In this case, for example, the LaMondue Law Firm is not protected by section 324.02l(9)(b) and as lessee and bailee of the car presumably remains liable under the dangerous instrumentality doctrine.